Opinion
GAFFEY, J.
DISCUSSION
I. Factual Background
Walter Hoye, U (Appellant), an Oakland minister, would routinely go to the 200 block of Webster Street, in Oakland, California, for a few hours on Tuesday mornings, where he would stand in front of the Family Planning Specialists Medical Group building holding a sign and literature for distribution. He often would take up his position by “his tree” located in front of the clinic. Appellant’s sign on the days in question stated, “Jesus loves you and your baby. Let us help.” The literature he had to pass out would also provide contact information for alternatives to abortion. Sometimes Appellant would approach people walking to the clinic and talk to them. The clinic, in an effort to both block Hoye’s signs and frustrate his attempts to communicate with their clients, organized volunteer “escorts” to place themselves and large blank posters between Hoye and clinic clients.
The Oakland City Council enacted a so-called “bubble zone” ordinance in February 2009. Based on Appellant’s actions on April 29 and May 3, 2009, *Supp. 4 he was charged with several violations of the ordinance. (Oakland Mun. Code, § 8.52.030, subd. (B).) The Oakland ordinance makes it a criminal offense to “knowingly approach” within eight feet of any person who is seeking to enter a reproductive health care facility without the consent of such person, for the purpose of counseling, harassing, or interfering with such person.[1] Oakland Municipal Code section 8.52.020, subdivisions (C) and (D), define the terms “harassing” and “interfering.”[2]
The prosecution presented testimony from four separate witnesses who described with varying degrees of specificity three to 12 different interactions between Appellant and the individuals who entered 200 Webster Street on the two days in question. All evidence came through testimony of clinic employees, escorts, and a single friend and supporter of Appellant. The defense also presented a videotape of the events of each day. Neither the victims nor Appellant testified at trial.
The jury convicted Appellant of violating the ordinance on each of the two days in question.
II. Jury Instructions
A. Unanimity Instruction
“Defendants in criminal cases have a constitutional right to a unanimous jury verdict.” (People v. Ñapóles (2002) 104 Cal.App.4th 108, 114 [127 Cal.Rptr.2d 777].) When a defendant is charged with a single criminal act, but the evidence reveals more than one instance of the charged crime, either the prosecution must select the particular act upon which it relies to prove the *Supp. 5 charge, or the jury must be instructed that it must unanimously agree beyond a reasonable doubt that the defendant committed the same specific criminal act. (People v. Russo (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641].)
If the prosecution does not make a selection, the court has a sua sponte duty to give an instruction stating that the jury must unanimously agree upon the act or acts constituting the crime. (People v. Russo, supra, 25 Cal.4th at p. 1132.) CALCRIM No. 3500, the instruction on unanimity, provides in pertinent part: “The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed.”
The purpose of the unanimity instruction is to prevent a verdict that results from some jurors believing the defendant committed one act and others believing the defendant committed a different act, without agreement on what conduct constituted the offense. (People v. Washington (1990) 220 Cal.App.3d 912, 915-916 [269 Cal.Rptr. 668].) If a jury is permitted to amalgamate evidence of multiple offenses, no one of which has been proven beyond a reasonable doubt, the prosecution’s burden is lessened and the defendant is denied due process. (People v. Smith (2005) 132 Cal.App.4th 1537, 1545 [34 Cal.Rptr.3d 472].)
Respondent argues that Appellant’s multiple acts constitute a single criminal event as a continuous course of conduct, thus falling within an exception to the requirement for unanimity. A court has no duty to instruct on unanimity when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct, or when the statute at issue contemplates a continuous course of conduct over a period of time, or “ ‘when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.’ [Citations.]” (People v. Dieguez (2001) 89 Cal.App.4th 266, 275 [107 Cal.Rptr.2d 160].)
The Oakland ordinance neither proscribes a continuous course of conduct nor a series of acts over a period of time. Rather, it prohibits anyone from knowingly approaching within eight feet of a person who is seeking entry to *Supp. 6 a reproductive health care facility, in order to counsel, harass, or interfere with that person, without his or her consent. Each such act by a person is a separate violation of the Oakland ordinance. Thus, every such encounter by Appellant could have factually been the basis for a juror to find him guilty of a violation of the ordinance.
In this case, Appellant was engaging in First Amendment activity. (U.S. Const., 1st Amend.) He contacted multiple persons each day. Appellant presented various defenses to many of the encounters presented to the jury as evidence that he had not violated Oakland Municipal Code section 8.52.030, subdivision (B). For some encounters, the defense argued that Appellant did not “approach,” rather he simply stood still as the person walked towards the building, which, as discussed below, is not a violation of the ordinance. For other encounters, the defense argued Appellant stopped before getting within eight feet of the person walking towards the building, which is also not a violation of the ordinance. And for still other encounters, the defense argued Appellant did not “knowingly approach within eight feet” because he could not have seen or known the distance between himself and the person walking towards the building due to either the escorts using giant poster boards to block his line of sight, or to his having his back turned towards persons entering. The different defenses gave the jury a rational basis to distinguish between the various acts.
Appellant requested a clarifying instruction on the term “knowingly approach.” This would have enabled the jury to view each act of Appellant separately, to consider the different defenses proffered, and also forced the People (Respondent) to elect which act it was relying on as the basis of a conviction. Respondent, however, objected to such an instruction, positing that the ordinance was clear on its face and that the Oakland City Council had not defined the term further. The court ruled in favor of Respondent and did not give a unanimity instruction. In closing argument, Respondent did not elect any specific encounters as the particular acts that were the violations of Oakland Municipal Code section 8.52.030, subdivision (B) on April 29 and May 3, 2009. Rather, Respondent pointed to all of the incidents described by the witnesses and depicted by the videotape and argued that Appellant thereby violated the ordinance.
Failure to give a unanimity instruction is governed by the standard set forth in Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824], which requires the error to be harmless beyond a reasonable *Supp. 7 doubt. Regarding failure to give a unanimity instruction, where multiple acts could have been the basis for the verdict, “we cannot say beyond a reasonable doubt that each juror agreed on the particular criminal act that formed the basis of the verdict.” (People v. Melhado (1998) 60 Cal.App.4th 1529, 1536 [70 Cal.Rptr.2d 878].) Since we cannot find beyond a reasonable doubt that the jury would have reached the same result if it had been instructed with CALCRIM No. 3500, the failure to so instruct was not harmless.
B. Special Instruction on the Term “Approach”
Oakland Municipal Code section 8.52.030, subdivision (B) makes it a criminal offense to “knowingly approach within eight feet of any person seeking to enter such a facility, or any occupied motor vehicle seeking entry, without the consent of such person or vehicle occupant, for the purpose of counseling, harassing, or interfering with such person or vehicle occupant.”
Generally trial courts are not required to define jury instructions containing words or phrases that are commonly understood. (People v. Rowland (1992) 4 Cal.4th 238, 270-271 [14 Cal.Rptr.2d 377, 841 P.2d 897]; see CALCRIM No. 200.) However, as explained below, the term “knowingly approach” has a special legal significance beyond everyday use. The ordinance before this court appears very similar to a Colorado statute considered by the United States Supreme Court in Hill v. Colorado (2000) 530 U.S. 703 [147 L.Ed.2d 597, 120 S.Ct. 2480] (Hill), in that both proscribe virtually the same conduct by protesters. Neither the Oakland ordinance nor Colorado law includes further legislative explanation or definition of the term “knowingly approach.”
In Hill, supra, 530 U.S. 703, the Supreme Court found the Colorado statute was valid on its face, by distinguishing it from the unconstitutional “floating buffer zone” in Schenck v. Pro-Choice Network (1997) 519 U.S. 357 [137 L.Ed.2d 1, 117 S.Ct. 855] (Schenck). The Schenck court had invalidated a federal injunction that required a protester to either stop talking or get off the sidewalk whenever a patient came within 15 feet of the protester. The Hill court concluded that there were two significant distinctions between Schenck and Hill, distinctions which meant the Colorado statute was valid, whereas the New York injunction had failed.
First, Schenck, supra, 519 U.S. 357, presented an injunction, while the Colorado case involved an ordinance or law. Restraining orders and injunctions, as judicial decrees, have a greater risk of censorship and discriminatory *Supp. 8 application than do ordinances or laws. (See Madsen v. Women’s Health Center (1994) 512 U.S. 753, 764-765 [129 L.Ed.2d 593, 114 S.Ct. 2516].)
Second, Schenck’s blanket “floating buffer zone” prohibited all speech or leafleting within 15 feet of a patient or clinic worker entering or leaving a clinic. The Colorado statute, however, only prohibited a protestor from “ ‘knowingly approaching]’ ” a clinic patient, thus allowing a protestor to remain stationary and, while standing still, address a patient passing by. (Hill, supra, 530 U.S. at p. 713; id., at p. 727) In the case at bar, we are presented with an ordinance very similar to that in Hill, in that the Oakland ordinance prohibits the same “knowingly approach” conduct.
Hill, supra, 530 U.S. at page 713, found the “knowing approach” to be a saving factor in upholding the constitutionality of the Colorado statute because it allows protestors, while they remain stationary, to verbally address and proffer leaflets to passing patients. Thus, the term “knowingly approach” does have legal significance based on Hill and should have been defined for the jury.[3]
Also, on the first full day of deliberations, the jury asked if there was a legal definition of “approach,” and for it to be provided. In response, the court informed the jury that “Some words including ‘approach’ have no legal meanings that are different from their meanings in everyday use. Words not specifically defined in the instructions including ‘approach’ are to be applied using their ordinary everyday meanings [yz'c].”
By failing to provide further guidance on the term “approach,” the court left the jury unaware that it does not prohibit a protestor who remains in a stationary location from both verbally addressing passersby and proffering his or her leaflet material for a person to take if he or she wishes. (Hill, supra, 530 U.S. at p. 727.)
Without this limitation of “approach,” the jury lacked the correct understanding of conduct the ordinance did not forbid. This alone, and certainly when considered in connection with the lack of unanimity instruction, leads us to conclude that the convictions must be reversed.
*Supp. 9 DISPOSITION
Because we reverse due to instructional errors, we need not address Appellant’s other contentions. The judgment is reversed.
True, P. J., and Carvill, J., concurred.

 Oakland Municipal Code section 8.52.030, entitled “Prohibited harassment of individuals seeking access to health care facilities,” reads as follows: “B. Within one hundred (100) feet of the entrance of a reproductive health care facility, it shall be unlawful to willfully and knowingly approach within eight feet of any person seeking to enter such a facility, or any occupied motor vehicle seeking entry, without the consent of such person or vehicle occupant, for the purpose of counseling, harassing, or interfering with such person or vehicle occupant.”

 Oakland Municipal Code section 8.52.020 provides that: “C. ‘Harassing’ means the non-consensual and knowing approach within eight feet of another person or occupied motor vehicle for the purpose of passing a leaflet or handbill, to display a sign to, or engage in oral protest, education, or counseling with such other person in a public way or on a sidewalk area within one hundred (100) feet of the entrance of a reproductive health care facility. QQ D. ‘Interfering’ means to restrict a person’s freedom of movement or access to or egress from a reproductive health care facility providing reproductive health services.”

 Hill provides guidance on two instructional issues relating to the ordinance at bar: the protestor, while remaining stationary, can verbally address passersby and can proffer leaflets to passersby, who remain free to reject them. (Hill, supra, 530 U.S. at pp. 727-730; see also id., at p. 740 (conc. opn. of Souter, J.).)