[No. S088368. June 28, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
SUSAN LEE RUSSO, Defendant and Appellant.

In re SUSAN LEE RUSSO on Habeas Corpus.

**COUNSEL**

Jim Fahey, under appointment by the Supreme Court; George Nunez; and Ralston L. Courtney for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, Jeffrey D. Firestone, Robert P. Whitlock and Edgar A. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**CHIN, J.**—In California, a conviction for conspiracy requires proof that at least one of the conspirators committed an overt act in furtherance of the conspiracy. We granted review to decide whether the jury must unanimously agree on a specific overt act. We conclude the jury need not agree on a specific overt act as long as it unanimously finds beyond a reasonable doubt that some conspirator committed an overt act in furtherance of the conspiracy.

## I. Factual and Procedural History

On the night of July 14, 1994 (all dates are to the year 1994), a Fresno County deputy sheriff found David Russo's body, dead from a gunshot wound to the back of the head, wrapped inside a sleeping bag in the backseat of David's car in a remote rural location. David's wife, defendant Susan Lee Russo (hereafter defendant), and codefendants Bobby Morris and Jason Andrews were tried together for conspiring to murder and murdering him.

### A. Evidence at Trial

The prosecution presented evidence that defendant knew she would receive over $200,000 in the event of David's death from his employer, the United States Navy. Circumstantial evidence, including a comparison of bloodstains found in the bedroom of the Russo house in Riverdale with bloodstains found near the body, indicated that David had been killed in that bedroom. Other evidence showed that David had possessed a nine-millimeter Beretta handgun.

Defendant told the police the following: She let some people into her house around 1:00 a.m. on July 14, and after that she saw David's nine-millimeter Beretta gun. She had given the gun to someone on July 12. She told the people who had entered her house that her husband was asleep and they should keep their voices down. The people were making hand signals. Someone shot David with his own gun. The shot was muffled and occurred while she was checking on one of her children. After the shot, she saw her

husband lying on the bed and the other persons still in the bedroom. The gun was wrapped in a towel. She picked up the gun and handed it to one of the others. She and the others then wrapped David's head in a garbage bag and his body in sleeping bags, tied ropes around the body, and put it into David's car. The others talked about a meeting place and then left. She was told the car would be "torched." She later cleaned up the bedroom.

Defendant admitted that she had previously talked about her husband's killing and that "outside people" would be hired to do it. She had the impression it would be done that night. Defendant knew that David was insured. She had planned to buy a house and pay bills with the insurance proceeds. Regarding the killing, she said, "It was just an easy out. It was stupid."

Travis Hayes testified that on July 13, in defendant's presence, Andrews solicited him to kill David. Andrews had a nine-millimeter handgun strapped to his side. Defendant told Hayes she could get him whatever money he wanted. Hayes said he would consider it. Defendant and Andrews gave Hayes $100. Later, Hayes told Andrews he could not go through with the crime. Two days after that, Andrews told Hayes that David had already been killed and asked Hayes to burn David's car. Hayes did not do so.

James Plantz testified that a few days before David's death, Morris asked him if he or anyone he knew would kill someone for $100. Morris said he would help, but the other person would have to do the actual killing. Plantz refused to help Morris. The day before the killing, Morris made statements to Plantz indicating involvement in the plan to kill David. Later that day, Andrews told Plantz that he had hired someone to do a killing for $100, but that the person had backed out. The next day, Morris told Plantz that Andrews had killed the intended victim by shooting him. Morris took out a nine-millimeter pistol, ejected a spent casing from it, and said, "Oh, there it is."

Morris testified on his own behalf. He said that Andrews had talked to him about killing David, but Morris thought the proposal was "bullshit." He never intended to help Andrews kill David. The night of the killing, defendant asked him to come to the Russo home in order, he assumed, to pick up some drugs. At the house, Andrews handed him a gun and told him he could have $100 if he killed David. Morris declined and returned the gun to Andrews. Andrews then took the gun, wrapped it in a towel as a silencer, and entered David's room with defendant. Morris heard a muffled shot. He then helped Andrews and defendant dispose of David's body and the gun. He felt he had to because his fingerprints were on the gun.

Andrews also testified on his own behalf. He said he had become sexually involved with defendant before David's death. She had talked about possibly divorcing David but never about killing him. Before the killing, defendant gave him some of David's guns, including the nine-millimeter handgun. She told him David wanted the guns out of the house before someone used them in the house. The evening of the killing, defendant asked him to come to her home and drop off some drugs. He and Morris went to the Russo home shortly after midnight and gave defendant some drugs. Morris asked where David was. Defendant told him he was in a back room. Morris disappeared down the hall and Andrews heard a gunshot. Morris then came out of David's room and pointed the nine-millimeter gun at Andrews. Morris told Andrews and defendant to help dispose of the body. Andrews did not think defendant was involved in the shooting. She never asked Andrews to kill David.

## B. *Procedural History*

The prosecution charged defendant, Andrews, and Morris with David's murder under the special circumstances of murder for financial gain and lying in wait, and with conspiracy to murder David. (Pen. Code, §§ 182, 187, 190.2, subd. (a)(1) & (15).) (It also charged defendant with another count not relevant to the issue before us.) As part of the conspiracy charge, the prosecution alleged the three committed 10 overt acts: (1) Morris asked Plantz if he knew anyone who would kill David; (2) defendant gave Andrews David's handgun; (3) Andrews and defendant asked Hayes to help them kill David; (4) defendant told Hayes she would pay him whatever he asked if he would help kill David; (5) Andrews gave Hayes $100 after he and defendant asked him to help kill David; (6) defendant contacted Andrews after David went to sleep the night of the killing; (7) Andrews and Morris went to the Russo house that night; (8) defendant let Andrews and Morris into the house; (9) defendant let Andrews and Morris into the bedroom of her sleeping husband David; and (10) defendant, Andrews, and Morris fatally shot David in the back of the head with the nine-millimeter Beretta while he was asleep.

During argument to the jury, the prosecutor asserted that the jury did not have to agree on any specific overt act as long as it agreed unanimously that at least one was committed. Later, out of the jury's presence, the trial court expressed the same view. Accordingly, it instructed the jury that all the jurors had to agree on the verdict but not also that it had to agree unanimously on a specific overt act.

The jury convicted defendant of first degree murder and conspiracy to murder and found the special circumstance allegations true. The verdict form

for the conspiracy charge stated the jury unanimously agreed that at least one overt act was committed. The jury was unable to reach a verdict as to Andrews. It found Morris guilty of David's first degree murder but was unable to reach a verdict on the special circumstance allegations and the conspiracy charge. The court sentenced defendant to prison for life without the possibility of parole.

On appeal, defendant argued, among other things, that the trial court erred prejudicially in not requiring the jury to agree unanimously on at least one specific overt act. The Court of Appeal agreed that the court erred, but it found the error harmless. It modified the judgment in a way not relevant here and affirmed it as modified. We granted defendant's petition for review, limited to the issue regarding jury unanimity as to a specific overt act.

## II. DISCUSSION

At common law, and still today where unchanged by statute, conspiracy consisted of the unlawful agreement, and no overt act was required to establish the crime. (See generally Perkins & Boyce, Criminal Law (3d ed. 1982) § 5.B.3., pp. 685-687; 2 LaFave & Scott, Substantive Criminal Law (1986) Conspiracy—Limits of Liability, § 6.5(c), pp. 93-94.) Today, many jurisdictions, including California, require proof of an overt act. (*Ibid.*) In California, "No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement . . . ." (Pen. Code, § 184; see also *id.* § 182, subd. (b).) Thus, "A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416 [84 Cal.Rptr.2d 665, 975 P.2d 1071].)

One purpose of the overt act requirement is to provide a *locus penitentiae*—an opportunity to repent—so that any of the conspirators may reconsider and abandon the agreement before taking steps to further it, and thereby avoid punishment for the conspiracy. (*People v. Morante, supra,* 20 Cal.4th at p. 416, fn. 4; *People v. Zamora* (1976) 18 Cal.3d 538, 549, fn. 8 [134 Cal.Rptr. 784, 557 P.2d 75].) Another purpose is "to show that an indictable conspiracy exists" because "evil thoughts alone cannot constitute a criminal offense." (*People v. Olson* (1965) 232 Cal.App.2d 480, 489 [42 Cal.Rptr. 760]; see also *People v. Jones* (1986) 180 Cal.App.3d 509, 516 [225 Cal.Rptr. 697].)

In a criminal case, a jury verdict must be unanimous. (*People v. Collins* (1976) 17 Cal.3d 687, 693 [131 Cal.Rptr. 782, 552 P.2d 742]; see Cal. Const., art. I, § 16 [expressly stating that "in a civil cause three-fourths of the jury may render a verdict" and thereby implying that in a criminal cause, only a unanimous jury may render a verdict].) The court here so instructed the jury. (See CALJIC No. 17.50.) Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. (*People v. Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971].) Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. (*People v. Castro* (1901) 133 Cal. 11, 13 [65 P. 13]; *People v. Williams* (1901) 133 Cal. 165, 168 [65 P. 323]; CALJIC No. 17.01; but see *People v. Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643].)

This requirement of unanimity as to the criminal act "is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 612 [21 Cal.Rptr.2d 752].) For example, in *People v. Diedrich, supra,* 31 Cal.3d 263, the defendant was convicted of a single count of bribery, but the evidence showed two discrete bribes. We found the absence of a unanimity instruction reversible error because without it, some of the jurors may have believed the defendant guilty of one of the acts of bribery while other jurors believed him guilty of the other, resulting in no unanimous verdict that he was guilty of any specific bribe. (*Id.* at pp. 280-283.) "The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count." (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472 [195 Cal.Rptr. 233].)

On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the "theory" whereby the defendant is guilty. (See generally *People v. Jenkins* (2000) 22 Cal.4th 900, 1024-1026 [95 Cal.Rptr.2d 377, 997 P.2d 1044].) The crime of burglary provides a good illustration of the difference between discrete crimes, which require a unanimity instruction, and theories of the case, which do not. Burglary requires an entry with a specified intent. (Pen. Code, § 459.) If the evidence showed two different entries with burglarious intent, for example,

one of a house on Elm Street on Tuesday and another of a house on Maple Street on Wednesday, the jury would have to unanimously find the defendant guilty of at least one of those acts. If, however, the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent, that uncertainty would involve only the theory of the case and not require the unanimity instruction. (*People v. Failla* (1966) 64 Cal.2d 560, 567-569 [51 Cal.Rptr. 103, 414 P.2d 39].) Other typical examples include the rule that, to convict a defendant of first degree murder, the jury must unanimously agree on guilt of a specific murder but need not agree on a theory of premeditation or felony murder (*People v. Pride* (1992) 3 Cal.4th 195, 249-250 [10 Cal.Rptr.2d 636, 833 P.2d 643]), and the rule that the jury need not agree on whether the defendant was guilty as the direct perpetrator or as an aider and abettor as long as it agreed on a specific crime (*People v. Santamaria* (1994) 8 Cal.4th 903, 918-919 [35 Cal.Rptr.2d 624, 884 P.2d 81]).

██ We must now decide where the requirement of an overt act fits into this dichotomy between a specific crime and a theory of the case. Must the jury unanimously agree on at least one *specific* overt act, or does it suffice if it agrees there was at least one such act? The first Court of Appeal decision to consider the question, *People v. Jones, supra*, 180 Cal.App.3d 509, concluded "that the jury only need be unanimous in finding *an* overt act was done in furtherance of the conspiracy, not in finding a particular overt act was done." (*Id.* at p. 516.) Accordingly, "a trial court need not instruct the jury they must unanimously agree as to the overt act done in pursuance of a conspiracy." (*Id.* at pp. 516-517.) Several subsequent cases have agreed with this conclusion. ██ (*People v. Lopez* (1993) 20 Cal.App.4th 897, 904 [24 Cal.Rptr.2d 649]; *People v. Godinez* (1993) 17 Cal.App.4th 1363, 1366-1367 [22 Cal.Rptr.2d 164]; *People v. Von Villas* (1992) 11 Cal.App.4th 175, 233-235 [15 Cal.Rptr.2d 112]; *People v. Cribas* (1991) 231 Cal.App.3d 596, 611-612 [282 Cal.Rptr. 538].)[1] To date, we have taken no position on the question. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1227, fn. 15 [56 Cal.Rptr.2d 49, 920 P.2d 1254].)

---

[1]The Attorney General also cites an unpublished Court of Appeal opinion that agrees with this line of cases. The unpublished decision does not involve defendant and is unrelated to this case other than that it has a similar legal issue. The citation violates the general rule that an unpublished opinion "shall not be cited or relied on by a court or a party in any other action or proceeding . . . ." (Cal. Rules of Court, rule 977(a); see *People v. Webster* (1991) 54 Cal.3d 411, 428, fn. 4 [285 Cal.Rptr. 31, 814 P.2d 1273].)

Without elaboration, the Attorney General cites an exception to this general rule that applies "when the opinion is relevant to a criminal or disciplinary action or proceeding because it states reasons for a decision affecting the same defendant or respondent in another such action or proceeding." (Cal. Rules of Court, rule 977(b)(2).) Apparently the Attorney General claims the right to cite that case because the People were the respondent there as well as here. The People, however, are the respondent in *every* appeal by a criminal defendant. The terms "defendant" and "respondent" in California Rules of Court, rule 977(b)(2), relate to the previously mentioned "criminal or disciplinary action," not an appellate designation. Thus,

 The Court of Appeal here held that the jury must unanimously agree on a specific overt act. It and other courts have interpreted *People v. Brown* (1991) 226 Cal.App.3d 1361, 1367-1370 [277 Cal.Rptr. 309], and *People v. Ramirez* (1987) 189 Cal.App.3d 603, 611-615 [236 Cal.Rptr. 404], as supporting that conclusion. (E.g., *People v. Godinez, supra*, 17 Cal.App.4th at p. 1367.) However, neither of these cases clearly holds such unanimity is required. *Ramirez* seemed to assume this form of unanimity is required, but it actually concluded only that "any error in failure to give a specific unanimity instruction was harmless." (*People v. Ramirez, supra*, 189 Cal.App.3d at p. 615.) Although *Brown* stated that "an overt act is an essential element in the crime of conspiracy," its actual holding was "that a conspiracy conviction cannot stand if the only overt act found occurred after commission of the criminal offense which was the conspiracy's object." (*People v. Brown, supra*, 226 Cal.App.3d at p. 1369.) That holding is not at issue here. In any event, we agree with *People v. Jones, supra*, 180 Cal.App.3d 509, and those cases following it, and disagree with any interpretation of *Ramirez* and *Brown* that is contrary to those decisions.

Defendant argues that the overt act requirement is an "element" of the crime of conspiracy, thus requiring the specific unanimity instruction. She also notes that Penal Code section 182, subdivision (b), requires that "one of the acts alleged [in the indictment or information be] proved." The Attorney General counters that the overt act is not an element for these purposes but merely a theory of the case. We believe that asking whether the overt act is an "element" of the crime is not helpful in deciding this question. We ourselves have described the overt act requirement as an element of conspiracy. (E.g., *People v. Swain* (1996) 12 Cal.4th 593, 600 & fn. 1 [49 Cal.Rptr.2d 390, 909 P.2d 994].) We do not doubt that the requirement of an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt. But that element consists of *an* overt act, not a *specific* overt act. Moreover, Penal Code section 182, subdivision (b), merely says one of the acts must be proved; it does not say about what the jury must be unanimous.

 The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a "particular crime" (*People*

the reference to the "same defendant" means the defendant in a criminal action, and, particularly important here, the reference to the same "respondent" means the respondent in the "disciplinary action or proceeding," not a respondent on appeal. Thus, this exception applies only when the unpublished opinion is related to the same criminal or disciplinary action; it does not permit citing every unpublished criminal opinion in every other criminal case. Accordingly, we do not consider the unpublished opinion.

*v. Diedrich, supra,* 31 Cal.3d at p. 281); it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed her guilty of another. But unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate "when conviction on a single count could be based on two or more discrete criminal events," but not "where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event." (*People v. Perez* (1993) 21 Cal.App.4th 214, 223 [26 Cal.Rptr.2d 691].) In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction.

■ In this case, the question thus becomes whether the evidence suggested two discrete crimes, i.e., two discrete conspiracies, or merely possible uncertainty on how the defendant is guilty of a particular conspiracy. The overt act, although necessary to establish a punishable conspiracy, need not itself be criminal. (*People v. Robinson* (1954) 43 Cal.2d 132, 139 [271 P.2d 865]; *People v. Jones, supra,* 180 Cal.App.3d at p. 516.) If only one agreement existed, only one conspiracy occurred, whatever the precise overt act or acts may have been. The evidence here showed but one agreement, and hence but one conspiracy—the agreement by defendant and at least one other person (Morris or Andrews or both) to murder David. Although the jury had to find at least one overt act, whether it was one or another of several possible acts only concerns the way in which the crime was committed, i.e., the theory of the case, not whether discrete crimes were committed. Thus, if the jurors disagreed as to what overt act was committed, and agreed only that *an* overt act was committed, they would still have unanimously found defendant guilty of a particular conspiracy. No danger exists that some jurors would think she was guilty of one conspiracy and others would think she was guilty of a different one.

Moreover, any one of the conspirators, and not necessarily the charged defendant, may commit the overt act to consummate the conspiracy. (Pen. Code, § 184; *People v. Robinson, supra,* 43 Cal.2d at p. 140; *People v. Jones, supra,* 180 Cal.App.3d at pp. 515-516.) ■ Disagreement as to who the coconspirators were or who did an overt act, or exactly what that act was, does not invalidate a conspiracy conviction, as long as a unanimous jury is convinced beyond a reasonable doubt that a conspirator did commit some overt act in furtherance of the conspiracy. When two or more persons

combine to commit a crime, the jury need not agree on exactly who did what as long as it is convinced a particular defendant committed the crime regardless of what that defendant's precise role may have been. Sometimes there may be uncertainty as to which of two persons did what, but no doubt that each, or at least a particular defendant, was guilty of the crime. "If 12 jurors must agree on the role played by the defendant, the defendant may go free, even if the jurors all agree defendant committed the crime. That result is absurd." (*People v. Perez, supra,* 21 Cal.App.4th at p. 222, and quoted in *People v. Santamaria, supra,* 8 Cal.4th at p. 920, fn. 8.)

 "Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes . . . the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other." (*People v. Santamaria, supra,* 8 Cal.4th at p. 919.) This case is a good illustration. Here, the jury clearly had no doubt that defendant—who essentially confessed—was guilty of conspiring with someone to murder David. But Morris and Andrews each professed innocence and blamed the other. The jury's inability to reach a conspiracy verdict as to either Morris or Andrews suggests at least some juror or jurors had a doubt whether either was a coconspirator. This doubt might extend to who committed the overt act or its exact nature. However, the jury could reasonably have agreed that defendant conspired with at least one of them and that some conspirator committed some overt act in furtherance of the conspiracy. Indeed, here the purpose of the conspiracy was not just furthered but fulfilled—David was actually murdered. To prohibit a conspiracy conviction for want of a specific overt act under these circumstances would be, to borrow the term from *People v. Perez, supra,* 21 Cal.App.4th at page 222, absurd.[2]

### III. Conclusion

Because the Court of Appeal found harmless what it perceived to be error, we agree with its conclusion, although not its reasoning. Accordingly, we

---

[2]In some cases, the trial court may have to give some form of a unanimity instruction. For example, if there is a question regarding the statute of limitations, the court might have to require the jury to agree an overt act was committed within the limitations period (see *People v. Zamora, supra,* 18 Cal.3d at p. 548), or if evidence existed that the defendant had withdrawn from the conspiracy, the court might have to require the jury to agree an overt act was committed before the withdrawal. No such circumstance exists here, so we do not consider these questions.

affirm the judgment of the Court of Appeal. We also disapprove any interpretation of *People v. Brown, supra*, 226 Cal.App.3d 1361, and *People v. Ramirez, supra*, 189 Cal.App.3d 603, that is inconsistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.