Filed 5/8/13  P. v. Arciga CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054961 |
| v. | (Super.Ct.No. SWF10002510) |
| TOMAS ARCIGA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry E. Johnson, Judge. (Retired judge of the Los Angles Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Felicity Senoski and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Tomas Arciga is serving 100 years to life after a jury convicted him of four counts of sodomizing his young nephew.  In this appeal, defendant argues the trial court erred when it failed to instruct the jury, sua sponte, that it must unanimously agree on which four incidents formed the basis for the four charges.  As discussed below, we conclude that the prosecutor unambiguously elected to use the four discrete events that defendant described during an interview with a sheriff's deputy, and so no unanimity instruction was necessary.

### FACTS AND PROCEDURE

Until he was arrested in November 2010, defendant repeatedly sodomized his young nephew (the child) over a number of years.  These incidents took place at the child's home and at defendant's home and ended when the child was eight years old.

On March 25, 2011, the People filed an information charging defendant with four counts of engaging in sodomy with a child age 10 or younger.  (Pen. Code, § 288.7, subd. (a).)  On September 19, 2011, the People filed an amended information charging these same crimes and specifying that each took place "on or about January, 2009 through and including November, 2010."

The jury in defendant's trial heard testimony on September 21, 2011.  First, the jury viewed a 49-minute videotape of the child's Riverside Child Assessment Team (RCAT) interview, which was also provided to them in a transcript.  The child testified briefly before and after the videotape.  The transcript of the interview indicates the child told the interviewer that defendant "touch[ed] [his] back part" "a lot of times" with defendant's "front part" and that the child had bled from there.  This took place at night

2

and in the early morning, both at the child's home and at defendant's home. The child stated that sometimes he would tell defendant to stop, and that sometimes defendant would stop, but sometimes he would say "I'm almost finished." The child thought he was "like 3 or 5" when defendant began to touch him like that. The child said the last time the touching happened was at his own home, after he turned 8 in June of 2010, but before school started for third grade.[1] The child described the act of sodomy, stating that he kept telling defendant to stop. The child then described another act of sodomy that took place in defendant's bedroom, and said that "it" happened more than one time. The child said that it happened also when he was in second grade at both his house and in defendant's bedroom. The child said that, whenever defendant spent the night at the child's home, "it" happened "most of the time."

Second, the child's mother testified. She stated that defendant was her cousin and had lived at her home with her family in Moreno Valley for about five months in 2007 or 2008. Even after defendant moved to his own home in San Jacinto, he would "many times" come to their home to spend the night. Defendant would sleep on the floor of their living room and the mother would sometimes find the child sleeping downstairs with the defendant, even though the child had been told not to. The child and his siblings would also spend the night at defendant's home, mostly on Tuesdays. When the child was about seven years old, they had a conversation in which the mother told the child not

---

[1] This contrasts with the defendant's own statements, set forth below, that the last incident happened 15 to 30 days before defendant's interview with the sheriff's deputy in December 2010.

to let anyone touch his private parts.  At that time, the child told his mother that defendant "sometimes slaps me in the butt."  The mother then warned defendant not to "do anything to my children, because I will put you in jail."

In November of 2010, when the child was eight years old, he told his mother that defendant was "touching his part."  The child did not say very much, but he cried a lot. The mother spoke with her husband, and with a friend, and later that evening spoke with police.  About two weeks later, she took the child to a hospital where some people spoke to her child with her outside of the room.

The final witness was Corporal Sandoval from the Riverside Sheriff's Department. In late 2010 he was a sheriff's deputy with 10 years of experience and extensive training in interviewing and interrogating crime suspects.  On December 8, 2010, Sandoval interviewed defendant for three to four hours.  The interview was audio and video recorded on the hard drive of a computer in the next room.  During the interview, defendant initially stated that he had sexual contact with the child on three occasions. The first took place in Moreno Valley approximately one year prior.  The defendant described contact between his penis and the child's anus, but no penetration.  Defendant began to describe a second incident of sexual contact, then "suddenly said that he had only spanked the victim's buttocks."  At that point, Sandoval determined it was time for a break in the interview.  As he left, Sandoval asked defendant if he thought they would be able to find any of his DNA on the child or the child's underwear.  Sandoval went into the next room to observe defendant.

4

When Sandoval returned to the interview room, he told defendant that he had evidence confirming that defendant had been raping the child. Defendant then described four separate incidents of sodomy. The first occurred at his mobile home in San Jacinto approximately one year prior to the interview. Defendant sodomized the child while the child sat on his lap on the couch. The second incident occurred in Moreno Valley, also approximately one year prior to the interview. Defendant and the victim were lying on the floor downstairs while the child's family was sleeping upstairs. Defendant asked the child in Spanish "me das tu colita" which translates roughly as "son, can I have your small butt." The child initially said no, but eventually agreed after defendant continued to insist. Defendant sodomized the child. When defendant ejaculated, the child told him it felt like defendant had urinated on him. Defendant wiped the child down and they went to sleep. The third incident occurred at defendant's mobile home in San Jacinto, three to four months prior to the interview. Defendant began to sodomize the child in the living room, and then moved to the bedroom. The child asked defendant if he was almost done. Defendant stated that he was, and then continued until he was finished. The fourth incident occurred in the child's Moreno Valley home 15 to 30 days prior to the interview. Defendant and the victim were downstairs lying on the floor while the child's family was upstairs asleep. Defendant sodomized the child. During this, the child asked him if he was done, or to stop. Defendant stated he was almost done and then continued until he was finished.

Sandoval asked the defendant if there were any other incidents. Defendant stated "that similar incidents had occurred a total of four to six times" and briefly described a

"fifth" incident in which he penetrated the child's anus with one of his fingers. Sandoval then asked defendant if he had anything else he wanted to say, or any questions. Sandoval asked defendant if he would write a letter of apology to the child's family, and defendant agreed to do so. Sandoval read the letter to the jury, translating from Spanish to English.

Sandoval testified that, after the interview was concluded, he went into the next room and copied the interview from the computer's hard drive onto a DVD or CD,[2] then placed both the DVD and the apology letter into the evidence file for this case. Sandoval sat at the computer and reviewed the recorded interview while he typed his report summarizing the interview, pushing "stop" and "play" at will. The CD or DVD that Sandoval burned was later determined to be defective, and he was not able to retrieve the file from the computer with the help of an information technology consultant. For this reason, Sandoval's memory and the written report are the only accounts of the interview with defendant.

On September 22, 2011, the jury convicted defendant of all four counts. On November 4, 2011, the trial court sentenced defendant to four consecutive life terms, for a total of 100 years to life. This appeal followed.

## DISCUSSION

Defendant argues that because he was charged with only four counts of sodomy, but the evidence reasonably established that he committed far more more than four such

---

[2] Sandoval called the item a CD, the prosecutor called it a DVD.

6

acts, the trial court committed prejudicial error in failing to instruct the jury, sua sponte, with either Judicial Council of California Criminal Jury Instruction, CALCRIM No. 3500 or No. 3501, the unanimity instruction. We disagree.

A criminal defendant is entitled to a verdict in which all 12 jurors concur as a matter of due process under the state and federal Constitutions. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) In any case in which the evidence would permit jurors to find the defendant guilty of a crime based on two or more discrete acts, either the prosecutor must elect among the alternatives or the court must require the jury to agree on the same criminal act. (*Id*. at pp. 1132-1133.) Where it is warranted, the court must give the instruction sua sponte. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) The omission of a unanimity instruction is reversible error if, without it, some jurors may have believed the defendant guilty based on one act, while others may have believed him guilty based on another. (*Russo, supra*, 25 Cal.4th at p. 1133.)

Here, the trial court was not required to give the unanimity instruction because the prosecution elected to have the jury consider only the four incidents of sodomy to which defendant confessed during his interview with Corporal Sandoval. The jury heard evidence about these four incidents. The jury also heard from Sandoval that, before he told defendant that there was physical evidence, defendant had stated that he merely had non-penetrating sexual contact with the child on three occasions, and had described two occasions, neither of which was sodomy. In addition, the jury heard the child describe during the RCAT interview several incidents of sodomy. Defendant claims in this appeal that the jury could have convicted him of the four counts, but without agreeing

7

unanimously on which incidents constituted the four counts. This argument fails because the prosecutor specified in his closing argument that the four counts were based on the four incidents of sodomy to which Sandoval testified that defendant confessed during their interview on December 8, 2010.

In his closing statement, the prosecutor made the following comments mentioning the four charged counts:

"And we've only charged four counts. And the evidence has proven beyond a reasonable doubt that this—these interactions probably happened far more than four times."

" . . . and he abused him sexually, multiple times. Many times. As I said, he was there one to two times a week. *And all we've charged is four counts, four counts that he admits to.*"

"There's only one reasonable conclusion in this case, and that is the defendant sodomized this young boy more than four times. But he's charged with four separate acts of sodomy of [John Doe]."

"I'm asking you to look at the evidence in this case, and come to the conclusion, the only reasonable conclusion based on the evidence, that the defendant is guilty of sodomizing his nephew four times."

With the statement "And all we've charged is four counts, four counts that he admits to," the prosecutor clearly elected to prove the four charges with defendant's description of the four incidents to Officer Sandoval. The prosecutor went on to describe each of the four acts in detail, just as related to Corporal Sandoval by defendant. The

8

prosecutor then commented that these accounts by defendant are corroborated by testimony from the child and from his mother, in that the abuse happened both at the child's home in Moreno Valley and at defendant's home in San Jacinto and "in the same time frame that [John Doe] has told us about, in the same time frame that we know the defendant had access to [John Doe], based on his mom."  Thus, it is clear from the prosecutor's closing argument that the four sodomy counts are based on the four particular instances described by defendant in the second portion of his interview.  The testimony of the child and his mother are used only for corroboration as to the general time frame and the two places where the crimes were committed.  The prosecutor clearly did not use this testimony to establish additional instances of abuse.  Thus, the trial court had no duty to instruction the jury, sua sponte, on the unanimity requirement.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

CODRINGTON
J.

9