Filed 12/2/15  P. v. Mendoza CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>ALBERTO MENDOZA, JR.,<br><br>　Defendant and Appellant. | 2d Crim. No. B260443<br>(Super. Ct. No. TA132530-01)<br>(Los Angeles County) |

Alberto Mendoza, Jr. appeals a judgment following conviction of making a criminal threat, with findings that he suffered a prior serious felony and strike conviction, and served two prior prison terms.  (Pen. Code, §§ 422, subd. (a), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)[1]  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Jorge Rodriguez lived on Elizabeth Avenue in Lynwood.  His home was surrounded by a fence with a locked gate across the driveway.  Rodriguez parked his vehicle inside the fence, next to his home.  Mendoza lived in an apartment across the street.

One day in September 2013, Rodriguez was leaving his driveway to drive to his employment as a FedEx delivery person.  Mendoza stood on the sidewalk next to the driveway and gave Rodriguez a "mad-dog" stare.  Rodriguez asked Mendoza, "Hey,

[1] Further statutory references are to the Penal Code unless otherwise stated.

how is it going?" Mendoza then walked in front of Rodriguez's vehicle and flagged him to stop. Mendoza threw up his hands and stated in a hostile voice, "Hey, man, you're saying, 'What's up? What's up?'" Rodriquez asked Mendoza if he was seeking employment with FedEx and, if so, described the application process. Mendoza then stepped away from the vehicle and no longer seemed hostile.

On several occasions following his initial interaction with Mendoza, Rodriguez saw him standing across the street. Mendoza would stare at Rodriguez and shout, "Hey," in a hostile voice.

One day in February 2014, as Rodriguez unlocked the gate across the driveway, Mendoza walked quickly toward him. Mendoza stood a few inches from Rodriguez's face and stated, "[E]very time I say 'What's up?' to you, it's like I want to do something to you." Mendoza had one hand under his shirt and swung his other hand back and forth. Mendoza then repeated, "Yeah, I can't get it out of my head. Every time I say, 'What's up?' to you, I want to do something to you."

Believing that Mendoza was threatening him, Rodriguez punched him. The two men wrestled to the ground as Rodriguez shouted for his mother to call the police. Rodriguez was on top of Mendoza, who was no longer resisting. Rodriguez allowed Mendoza to stand and ordered him to leave. Mendoza came toward Rodriguez again, but Rodriguez pushed him away and shouted, "Get out of here." Before he walked away, Mendoza said, "No, no. I'm going to catch you slipping. If you do this, I'm going to catch you slipping." Rodriguez suffered bruises from the incident; he believed that Mendoza intended to harm him.

*The Charged Incident*

In the late evening of March 13, 2014, Rodriguez returned home from work. His father opened the gate and Rodriguez drove inside. As he left his vehicle, Mendoza shouted, "Hey, my nigga. . . . Hey, I want to talk to you. I want to talk to you." Rodriguez walked toward the gate but did not open it. In a hostile voice, Mendoza stated that he wanted Rodriguez to walk outside the gate: "I want you to come out here. I want you to come out here right now. I want to fight you. I want to get at you." Mendoza

2

held his hand under a sweater. Rodriguez believed that Mendoza would physically harm him. Mendoza walked closer to Rodriguez and repeated, "I want to hit you. I want to hit you. I want to fight you. I want you to let me hit you." Rodriguez's mother shouted that police officers were arriving soon. Mendoza stated to Rodriguez, "I'm going to catch you slipping. I'm going to catch you slipping." Rodriguez's father heard Mendoza say, "I'll catch you asleep," as he made a gun motion with his hand. Mendoza then walked away prior to the arrival of police officers.

That evening, Los Angeles County Sheriff's Deputy Audrey Detreville interviewed Rodriguez, who appeared frightened and "shaky." Detreville also spoke to Mendoza who asked, "Why am I going to jail for threatening my neighbor?"

Rodriguez obtained a civil restraining order against Mendoza. He and his family later made plans to move from the neighborhood.

The jury convicted Mendoza of making criminal threats. (§ 422, subd. (a).) In a separate proceeding, the trial court found that Mendoza suffered a prior serious felony and strike conviction and served two prior prison terms. (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).) The court sentenced Mendoza to a prison term of nine years, consisting of a two-year midterm (then doubled), plus a five-year term for the prior serious felony conviction. The court imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment, and awarded Mendoza 278 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Mendoza appeals and contends that the trial court erred by: 1) not instructing with a unanimity instruction, and 2) refusing to instruct with the lesser-related offense of disturbing the peace. (§ 415, subd. (1).)

*DISCUSSION*

*I.*

Mendoza argues that the trial court committed reversible error by not instructing with CALRIM No. 3500 ["Unanimity"], sua sponte, because the prosecutor presented evidence of two distinct and separate criminal acts committed on March 13, 2014: threats to fight or "get" Rodriguez, and threats to catch Rodriguez "slipping."

Pursuant to the federal and California Constitutions, a jury verdict in a criminal prosecution must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) In addition, the jury must unanimously agree that the defendant is guilty of a *specific* crime. (*Ibid.*) If the evidence suggests that the defendant may have committed more than one discrete crime, either the prosecutor must elect among the crimes or the court must instruct the jury to agree that the defendant committed the same criminal act. (*Ibid.*; *People v. Leonard* (2014) 228 Cal.App.4th 465, 491 [statement of general rule].) Where the prosecutor does not make an election, the trial court has a sua sponte duty to instruct regarding jury unanimity. (*Leonard*, at p. 491.)

A unanimity instruction is not required, however, when the alleged acts are so closely connected as to form part of one transaction. (*People v. Williams* (2013) 56 Cal.4th 630, 682.) The "continuous conduct" rule applies when the defendant offers the same defense to each of the acts and there is no reasonable basis to distinguish between them. (*Ibid.* [defendant's acts of attempted robbery and robbery occurred close in time and he presented defense that he was not present at either crime]; cf. *People v. Davis* (2005) 36 Cal.4th 510, 560-562 [prosecutor presented evidence of two separate robberies; defendant had "entirely different" defenses regarding each robbery].) The continuous conduct rule is applicable where the criminal acts take place within a small window of time. (*Williams*, at p. 682.)

The trial court did not err by not instructing sua sponte regarding unanimity because Mendoza's threats were so closely connected as to form part of one transaction. (*People v. Curry* (2007) 158 Cal.App.4th 766, 782 [no unanimity instruction required where the taking of victim's shoes and phone occurred almost simultaneously].) All the

4

threats and acts occurred within a few minutes in the driveway outside the gate of the Rodriguez home.  Moreover, Mendoza "merely put the People to their proof" and did not present an affirmative defense to the charge.  (*People v. Parsons* (1984) 156 Cal.App.3d 1165, 1174.)  The continuous conduct rule applies here because Mendoza did not offer a separate defense to each threat.  There is also no reasonable basis for the jury to distinguish between the threats.  (*People v. Williams*, *supra*, 56 Cal.4th 630, 682.)

## II.

Mendoza asserts that the trial court erred by refusing to instruct with CALCRIM No. 2688 ["Disturbing the Peace:  Fighting or Challenging Someone to Fight"].  He contends that disturbing the peace is a lesser-related offense relevant to the factual circumstances here.

The trial court did not err by refusing the instruction.  A defendant has no right to instruction on a lesser-related offense, even if he requests the instruction and substantial evidence supports it.  (*People v. Jennings* (2010) 50 Cal.4th 616, 668.) "California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties."  (*Ibid.*)  Here the prosecutor did not agree.  We do not second-guess her decision.  Mendoza does not cite authority requiring the prosecution to explain or justify its refusal to consent to a lesser-related offense instruction.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

5

Allen J. Webster, Jr., Judge

Superior Court County of Los Angeles

_____

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Amanda V. Lopez, Deputy Attorney General, for Plaintiff and Respondent.