Filed 3/29/24  P. v. Mendoza CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082397 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD292374) |
| ALFREDO MENDOZA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Alfredo Mendoza appeals from a judgment imposed after a jury convicted him of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count one) and attempting to prevent or discourage a witness from seeking or causing his arrest (§ 136.1, subd. (b)(3); count two).  He contends: (1) there is insufficient evidence that he attempted to dissuade a witness from reporting a crime; and (2) the trial court should have instructed the jury that it had to agree unanimously on which of two possible weapons he used to commit the assault with a deadly weapon.  Finding no error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of April 3, 2021, Diego A. and his wife were at home with their four children.  Shortly after 10:00 p.m., their teenage daughter looked through her bedroom window and saw a stranger in the yard.  She was scared and screamed.  Diego ran to her room and looked out the window.  He saw a man later identified as Mendoza in the backyard in front of his daughter's window.  Diego opened the window and yelled, "What are you doing?"  Mendoza took off running.  Diego went through the window after him.  Diego's wife called 911.

Mendoza jumped over a fence into Rafael M.'s backyard.  Rafael came out of his house.  He and Diego grabbed Mendoza as he tried to climb over another fence.  Mendoza told the men "to let him go, that he didn't want any trouble."  He promised that "he wasn't going to come back."  While Mendoza was trying to get over the fence, Rafael saw him swinging a sharp object towards them in a slashing motion behind his back.

Another neighbor arrived to help detain Mendoza.  When they got Mendoza down from the fence, they "told him the police were coming, and he

---

[1]    Undesignated statutory references are to the Penal Code.

2

got scared." Mendoza swung a knife at Diego, cutting him in four places on his stomach and forearm.

The men eventually restrained Mendoza and held him face down for about 10 minutes until the police arrived. Mendoza told the men that "he didn't want any problems and just to let him go before the police came. Otherwise, he was going to come back. That he knew where to find [them], that he knew who [they] were." Mendoza said "that if [they] didn't leave him alone, that it was going to cause more problems and he would just come back."

A police helicopter spotted the men from above. When Mendoza heard the police arriving, he threw the knife aside, then took out some small pliers and threw them a shorter distance away. According to Diego, Mendoza never swung the pliers at him.

The police arrived and took Mendoza into custody. They found a pair of pliers about a foot or two away from him. After the police left, Rafael moved his car and found a knife near the tire. He turned it over to the police a few days later. Diego identified it as the knife Mendoza used to cut him during the struggle.

Mendoza testified in his own defense. On the night in question, he was under the influence of methamphetamine and marijuana. On his way to a friend's house, he took a shortcut through Diego's backyard. After he jumped the fence, he landed on his chest and could not breathe. He reached for his phone to call for help but pulled out the pliers instead. Mendoza denied that he was in possession of a knife and testified he had never seen the knife Rafael found near his car. According to Mendoza, he never swung the pliers or any other object at anyone and did not know how Diego suffered his injuries.

In an amended information, the People charged Mendoza with assault with a deadly weapon (§ 245, subd. (a)(1); count one) and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1); count two). The information further alleged that Mendoza had two serious felony and strike priors (§§ 667, subds. (a)(1) & (b)–(i), 668, 1170.12, 1192.7, subd. (c).)

In a jury trial, the court agreed to instruct the jury with CALCRIM No. 2622 on the witness intimidation count. At the conference on jury instructions, the prosecutor noted that this count was "charged as attempting to dissuade a witness from reporting a crime" (which is covered by subdivision (b)(1) of section 136.1).[2] However, the court expressed its view that the applicable subdivision was instead the one for preventing or dissuading a witness from causing or seeking an arrest (which is covered by subdivision (b)(3) of section 136.1). The court inquired, "Isn't that your theory, that they're holding him down? The cops are on the way. And your witnesses are saying he is saying if you don't let me go, if you don't let me get out of here, I'm coming back. I know where you live."

The prosecutor agreed that this was the appropriate theory of witness intimidation based on the evidence presented. The court then asked defense counsel if she wished to be heard on the matter. She responded, "No, Your Honor." Accordingly, the court suggested that the language of CALCRIM No. 2622 should require that " '[t]he defendant tried to prevent or

---

[2]     Section 136.1, subdivision (b), prohibits three types of witness intimidation. As relevant here, these include (1) preventing or dissuading a victim or witness from "[m]aking any report of that victimization to any peace officer" (*id.*, subd. (b)(1)) or (2) preventing or dissuading a victim or witness from "[a]rresting or causing or seeking the arrest of any person in connection with that victimization" (*id.*, subd. (b)(3)). CALCRIM No. 2622 includes alternative language for each of these prohibited forms of witness intimidation.

4

discourage . . . another person . . . from . . . causing or seeking the arrest of himself in connection with a crime.' " The court asked, "Are you both good with that?" The prosecutor and defense counsel both responded, "Yes, Your Honor."

Based on this agreement, the court gave CALCRIM No. 2622 to the jury as follows:

> "The defendant is charged in Count Two with intimidating a witness in violation of Penal Code section 136.1.
>
> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1.  The defendant tried to prevent or discourage another person from causing or seeking the arrest of himself in connection with a crime;
>
> "2.  That other person was a witness; [and]
>
> "3.  The defendant knew he was trying to prevent or discourage another person from causing or seeking the arrest of himself in connection with a crime and intended to do so."

The jury found Mendoza guilty as charged of both counts. For the witness intimidation count, the verdict form stated that the jury found Mendoza guilty "of the crime of ATTEMPTING TO PREVENT OR DISCOURAGE AN ARREST . . . ." In a bifurcated proceeding, the court found true one of the charged serious felony/strike priors, but not the other. The court sentenced Mendoza to a total sentence of ten years.

DISCUSSION

I

Mendoza first contends there is insufficient evidence that he attempted to dissuade a witness from reporting a crime in violation of section 136.1,

5

subdivision (b)(1). As noted, however, the trial court did not instruct the jury on this theory of witness intimidation. The court instead instructed on the theory that Mendoza attempted to prevent or discourage a witness from causing or seeking his own arrest, in violation of section 136.1, *subdivision (b)(3)*.

Mendoza has not argued on appeal that the trial court erred by instructing the jury on a different theory of the offense from the one charged in the information. Nor could he have done so because he forfeited the right to object to any variance between pleading and proof by failing to raise an objection in the trial court. (*People v. Maury* (2003) 30 Cal.4th 342, 427.) In fact, Mendoza's trial counsel expressly agreed to the jury instruction given by the trial court on the witness intimidation count.

Because Mendoza was not convicted of dissuading a witness from reporting a crime in violation of section 136.1, subdivision (b)(1), his sufficiency of evidence argument is misdirected. The jury did not find him guilty on such a theory. And Mendoza does not claim there is insufficient evidence of the only theory of witness intimidation on which he was convicted—that he attempted to prevent or discourage a witness from causing or seeking his own arrest in violation of section 136.1, subdivision (b)(3). A sufficiency of evidence claim must be assessed based on the case as it was tried and as the issues were determined in the trial court. (*Cole v. State of Arkansas* (1948) 333 U.S. 196, 202; see also *People v. Kunkin* (1973) 9 Cal.3d 245, 251 ["We, of course, cannot look to legal theories not before the jury in seeking to reconcile a jury verdict with the substantial evidence rule."].) Accordingly, Mendoza has forfeited his sufficiency of evidence claim by directing it to a legal theory that was never tried.

Even if Mendoza had challenged the subdivision (b)(3) theory, however, we would find sufficient evidence to support it. Mendoza made it clear that he wanted to escape apprehension by attempting to flee the scene, struggling with Diego and his neighbors to avoid detention, and promising not to return if they let him go. After learning that the police were on their way, Mendoza cut Diego with the knife multiple times in a continuing effort to escape. Mendoza also threatened that if the men did not let him go before the police arrived, he would come back and cause more problems. This was ample evidence that Mendoza attempted to prevent or discourage a witness from causing or seeking his arrest, in violation of section 136.1, subdivision (b)(3).

## II

Mendoza next argues that the trial court should have instructed the jury that it had to agree unanimously on which weapon he used (the knife or the pliers) in connection with the assault with a deadly weapon charge. We disagree.

In a criminal case, a jury verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) The trial court so instructed the jury. Additionally, the jury must agree unanimously that the defendant is guilty of a *specific* crime. (*Ibid.*) Thus, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid.*) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Ibid.*)

7

In deciding whether to give an unanimity instruction, "the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Russo, supra*, 25 Cal.4th at p. 1135.)

In this case, there was no evidence that Mendoza committed more than one assault with a deadly weapon. Even assuming any possibility of juror disagreement as to whether Mendoza used the knife or the pliers to stab Diego (notwithstanding Diego's unrefuted testimony that it was the knife), that would be nothing more than a dispute as to how exactly Mendoza committed the assault—not which of several discrete assaults with a deadly weapon Mendoza was guilty of committing. Accordingly, no unanimity instruction was required. (*Russo, supra*, 25 Cal.4th at pp. 1132, 1135; see also *People v. Garcia* (2022) 76 Cal.App.5th 887, 896–897 [trial court did not commit error by failing to instruct jury it had to agree unanimously as to which of two weapons defendant used as deadly weapon during a single assault—"the jurors were not required to unanimously agree that either was *the* deadly and dangerous weapon, so long as they did unanimously agree that *a* deadly and dangerous weapon was used in the assault"].)

## DISPOSITION

The judgment is affirmed.


                                                                    BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.