Filed 6/12/25  P. v. Groner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARCUS EBON GRONER,<br><br>    Defendant and Appellant. | D084415<br><br><br>(Super. Ct. No. SCD292855) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert O. Amador, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Tami Falkenstein Hennick and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

In December 2021, Marcus Ebon Groner physically attacked his father. A jury convicted Groner of abuse of an elder under circumstances likely to cause great bodily harm (Pen. Code, § 368, subd. (b)(1); count 1) and assault

with force likely to cause great bodily injury (§ 245(a)(4); count 2). As to both counts, the jury found true Groner personally inflicted great bodily injury. (§ 12022.7(c).) The court sentenced Groner to a prison term of five years plus 25 years to life on count 1 and stayed the same sentence as to count 2.

On appeal, Groner claims the facts underlying count 2 establish two distinct assaults, so the court prejudicially erred by failing to give a unanimity instruction on its own motion. We conclude the continuing course of conduct exception applies such that the court was not obligated to instruct on unanimity. We accordingly affirm.

I.

A.

In December 2021, Marvin Groner was in his mid-seventies. He went to his son Groner's apartment to help him with his car. Marvin parked in the apartment complex's lot next to Groner's car.

The pair tried to jump-start Groner's car without success. Marvin used a pocketknife to scrape some battery acid off the connector, but that did not help. Afterward, he put the knife in his pocket. Marvin and Groner ultimately called a tow service to come get the car.

While waiting for the tow service, Marvin sat in the driver's seat of his car with the door ajar, checking his phone, and Groner went inside his apartment. An agitated Groner came out, sat down in the front passenger seat of Marvin's car, and asked Marvin to give him the phone and take him to the store. Marvin declined because they had to wait for the tow service.

Groner—who has been diagnosed with schizophrenia—suddenly reached for Marvin's phone, pushed Marvin out of the driver's side door and onto the ground, and began kicking and hitting Marvin. When Marvin told Groner to get off him, Groner did. Marvin got up, and Groner asked him for

2

his car keys. Marvin said he did not have them and crossed the street to get away from Groner.

Groner pursued Marvin. He pushed Marvin to the ground and began hitting and kicking him again. Marvin remembered the knife in his pocket and used it to try to make Groner stop. Bystanders intervened, ending the beating.

B.

Two eyewitnesses observed the altercation.

The first witness lived in Groner's apartment complex. While sitting on his balcony stairs, he heard Groner yelling and saw Groner push Marvin out of his car and "start[ ] beating him." The witness did not observe Marvin yelling or doing anything physical in return. The witness then saw Marvin run across the street and Groner cross after him. The witness went to get mace, and when he came back out of his apartment, Marvin was on the ground and Groner was "kicking [Marvin] in the head."

The second witness was one of Groner's neighbors. He was on a balcony when he saw Groner, who was across the street, hit Marvin several times in the head, knock him down, and kick him multiple times in the head.

C.

Officers arrived on scene and identified Groner as a potential suspect. When officers began to approach Groner, he ran into his unit. It took longer than an hour before officers were able to take him into custody.

The officers obtained surveillance video of the second portion of the assault from the San Diego Metropolitan Transit Service central dispatch station. The video was admitted into evidence and played for the jury. This court has reviewed the video.

3

D.

Marvin was transported to the hospital by ambulance. Hospital staff saw Marvin had external injuries to his head including bruising, swelling, and a laceration. After a CT scan revealed no internal injuries, staff closed the laceration with two staples. Marvin also had scrapes on his knees. His injuries caused soreness.

E.

Groner was charged with three counts. The operative pleading also alleged Groner had committed two serious felony priors and multiple strike priors.

The jury found Groner guilty of the first two counts, related to his actions towards Marvin, but found him not guilty of count 3, resisting an officer (§ 148(a)(1)). Groner admitted the serious felony priors and the strike priors. The court found true beyond a reasonable doubt several aggravating circumstances.

At the sentencing hearing, the court denied Groner's motion to strike his strike priors. As to count 1, the court imposed a five-year sentence enhancement for the great bodily injury allegation with a consecutive term of 25 years to life in prison. The court also imposed a five-year sentence enhancement for the great bodily injury allegation with a consecutive term of 25 years to life in prison on count 2, but it stayed the sentence under Penal Code section 654. The court stayed punishment on the serious felony priors.

II.

We summarize the relevant law before addressing Groner's claim.

A.

To convict a defendant of a crime in California, the jury's verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) If a defendant

4

is charged with one crime but the evidence suggests more than one criminal act, either (1) the prosecution must elect the crime on which it relies or (2) the court must give the jury a unanimity instruction requiring them to agree on one act for which the defendant is culpable. (*Ibid.*) This process "is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." (*Ibid.* [cleaned up].) The court must give the unanimity instruction if it is warranted, even if the defendant fails to request it. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)

Several exceptions to the need to instruct on unanimity exist, including the continuous course of conduct exception. (*Hernandez*, 217 Cal.App.4th at p. 572.) The exception "arises in two contexts." (*Ibid.*) "The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense." (*Ibid.* [cleaned up].) The second is when the statute under which the defendant is charged "contemplates a continuous course of conduct of a series of acts over a period of time." (*Ibid.* [cleaned up].)

"Because our consideration of whether the trial court should have given a particular jury instruction involves a mixed question of law and fact which is predominantly legal, we review de novo whether the specific instruction was required." (*People v. Sorden* (2021) 65 Cal.App.5th 582, 616 [cleaned up].)

B.

Groner rightfully concedes "the offense of elder abuse 'contemplates a continuous course of conduct of a series of acts over a period of time'" such that the continuous course of conduct exception applies to count 1. (Citing *People v. Rae* (2002) 102 Cal.App.4th 116, 123-124.) He contends, however,

5

that assault "does not," and here the "two distinguishable acts of assault" in count 2 gave rise to a duty to instruct sua sponte on unanimity. The People counter that "the acts were so closely connected that they formed part of one and the same transaction." We conclude the People have the better argument.

The eyewitness who observed the entire incident, in his opening summation of the events, described what happened in a single paragraph that conveyed the events as part of a single transaction: "[Groner] pushed his father out of the car, and [Groner] started beating him and everything, like kicking him and stuff. His father ran across the street, and [Groner] went across the street where his father was by the [restaurant]. I went to get my mace. I came back, and [Groner] was kicking his father."

Similarly, Marvin's testimony did not suggest any meaningful time lapse during the struggle. When Groner stopped kicking and hitting Marvin, Marvin said Groner asked for his keys, Marvin replied he did not know where they were, and then he "continued to try to go across the street." There was not a lengthy period of time separating Groner's kicks and punches—just the time it took for Marvin to try to "put distance between" himself and his son.

That Marvin referred to when he "was first assaulted" in his testimony is not dispositive. When he began describing what happened across the street, the prosecutor suggested, "Let's call the first incident in the car and then the second incident out on the street." We agree with the People this was simply a means to conveniently break down the assault for the jury and was not an indication the prosecutor was presenting two discrete criminal acts for the jury's consideration.

Instead, the prosecutor largely described the behavior giving rise to the assault charge as one event, referring to "*the* incident," "part[s] of *the* assault"

6

or "part[s] of *the* incident." (Italics added.) Although at the beginning of closing arguments the prosecutor referenced "an earlier incident," the prosecutor focused not on presenting the jury with alternative theories of assault but instead on describing "*a* serious beating, *a* vicious attack, *a* vicious assault." (Italics added.) When breaking down the elements of the offense, the prosecutor did not do so twice—once for a first incident and again for a second—but just once. The prosecutor thus presented the assault charge as a unified event rather than a series of separate incidents.

The defense likewise focused on what happened as a single incident. Defense counsel explained to the jury that "[c]ounts 1 and 2, basically deal with the same thing, *the* assault allegedly on Marvin." (Italics added.) Defense counsel described the two counts as "[t]wo crimes for *the same action*." (Italics added.)

Perhaps tellingly, Groner cites no cases in support of his position that the continuing course of conduct exception is inapplicable here, instead focusing most of his argument on the issue of prejudice.

Yet we conclude this case is analogous to *Sorden*, in which this court concluded no unanimity instruction was required. In *Sorden*, the defendant was subject to a criminal protective order in favor of a prior girlfriend. (*Sorden*, 65 Cal.App.5th at p. 589.) The defendant unexpectedly saw his prior girlfriend in a neighbor's home. (*Id.* at pp. 589-590.) While inside the neighbor's home, the defendant grabbed his prior girlfriend by the arm to lead her outside. (*Id.* at p. 590.) He punched the neighbor, who punched him back. (*Ibid.*) The prior girlfriend fell down while trying to escape, and the defendant picked her up and put her down outside. (*Id.* at p. 616.) The defendant then lifted her over his shoulder and carried her to the end of the driveway, where he released her. (*Id.* at pp. 616-617.) The defendant was

7

charged with willfully violating a protective order (*id.* at p. 591), as well as an enhancement for a violation of the order "involving an act of violence" (*id.* at p. 614; Pen. Code, § 166(c)(4).)

On appeal, the defendant claimed the court should have given a unanimity instruction for the jury to agree as to which act constituted violence for purposes of the enhancement because the allegation "'involved two discrete acts [i.e., the punch and the forceful carrying] and two discrete victims.'" (*Sorden*, 65 Cal.App.5th at pp. 615-616.) This court disagreed, concluding the continuing course of conduct exception applied because "[a]ll of the violence occurred over a short period of time as [defendant] was removing [his prior girlfriend] from [the neighbor]'s apartment." (*Id.* at pp. 616-617.)

The same is all the more true here, where there was a single victim and the violence occurred over a short period of time as Groner unprovokedly beat his father while they waited for a tow truck to arrive.

Accordingly, the assault was a single transaction such that the continuing course of conduct exception applies. The court therefore did not err by not instructing the jury on unanimity. Given this conclusion, we need not address the remainder of the parties' arguments, including the People's contention that the instructions given conveyed the unanimity requirement or prejudice.

III.

We affirm.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.