Filed 3/17/21  P. v. Galvan CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073895 |
| v. | (Super.Ct.No. SWF1600847) |
| MANUEL ALVAREZ GALVAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bonnie M. Dumanis, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Seth Friedman and Kathryn A. Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Manuel Alvarez Galvan was convicted of over two dozen counts of various sexual crimes against one of his daughters.  On appeal, his sole

1

contention is that the jury was not properly instructed on its requirement that it "must agree unanimously the defendant is guilty of a *specific* crime" "when the evidence suggests more than one discrete crime" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132), also known as the unanimity requirement. We disagree, follow a directly-on-point, decade-old case that Galvan failed to cite in his opening brief, and affirm.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

Galvan began sexually molesting his daughter Jane Doe when she was seven years old. She heard one of her friends talk about "humping" and asked Galvan what the word meant. Galvan responded by asking her if she wanted to know what it felt like, then put his hand inside her underwear and touched her vagina. Doe knew something about the incident was wrong, but did not feel like she could tell Galvan to stop.

From then on, Galvan would go into her bed at night and either touch her vagina with his hand or have her masturbate him. He told her, "That's what makes me happy. I don't know why I feel this way, but I need this." Galvan, who is a truck driver, also sometimes brought Doe along on trips and molested her in the back of his truck.

When asked how frequently the sexual abuse took place, Doe stated: "I don't remember, like, exact numbers, but it was frequent. I mean, it . . . seemed like it was all the time. You know, this is something I don't want to think about, so I don't know exactly how many times a week. But it was – you know, every time I hear him coming down the hallway, I knew he's coming to our bedrooms. I'm like, 'Oh, no,' that kind of

---

[1] Undesignated statutory references are to the Penal Code.

2

thing. So it was a big fear of mine. I mean, it happened all the time in my mind since I can remember. It happened more frequently than not."

Doe would not push back because she was scared that Galvan would hurt her. She described her father as a violent person. She stated, "All the stuff that he—seeing him beat my mom . . . and beating us throughout our life, it just put a fear in me, that feeling like I can't—that this is a person you do not want to piss off. . . . [¶] I don't want to upset him because he will make you sorry. This is what he did to me for not taking my vitamins. He beat me severely that day, so I was very afraid of him. I never thought I could be honest with him or tell him anything that would upset him."

After Doe began having her period, "it wasn't just touching anymore." When Doe was either 11 and a half or 12, she lived for a year and a half in Germany, away from Galvan.[2] After she moved back, Galvan took her virginity, telling her that it was "going to hurt." Galvan would instruct Doe on how to have vaginal intercourse, and he would "put porn on so [she] could see how to do it." He had sex with her weekly. On one occasion, Galvan had Doe sit in a closet while Galvan had sex with her sister.

When Doe was 17, she became pregnant with Galvan's child. Doe kept the pregnancy hidden from her mother, and Galvan initially refused to take Doe to the doctor to get an abortion. Doe testified that Galvan eventually took Doe to the doctor for an abortion "only . . . because he knew it would be too late by then. We finally got to that

---

[2] The timing of events around this time has significance because 14 of the 25 counts Galvan was charged with were for sexual crimes against a child under 14, including six counts of rape of a child under 14.

3

doctor. She said, 'It's too late. You can't have one now.'" Doe gave birth to the child a few months after turning 18.

The sexual abuse continued for several more years after the child was born, and Doe became pregnant with Galvan's child on two more occasions. Doe aborted both pregnancies. When the child was approximately seven years old, Doe told her mother that Galvan was the father. At trial, Doe's mother testified that the child was conceived as a result of a night of drinking. Doe's sister testified to the same effect, saying that the sex between Doe and Galvan was consensual.

When Doe's child was approximately 16, Doe's aunt came across the results of the child's DNA test on Galvan's computer. Over time, and seeking to gather "as much evidence as [she] could," the aunt began to convince the family both that she had known about the paternity "for a while" and that she "was okay with the situation." Eventually, Galvan confided in the aunt, telling her that Doe was "the love of his life" and that he would marry her if he could. Galvan told the aunt, "'Look at pigs.' . . . 'If the mother and the son have sex, then the pigs come out okay. If the father and the daughter have sex, the pigs come out okay. As long as the pigs aren't brother and sister. If the pigs are brother and sister, they will come out deformed.'" The aunt "ask[ed] him specifically when he started, you know, having a relationship with her, and he told me—at that point, he told me that she was 13 when he started having a sexual relationship with her." The aunt ultimately went to the authorities.

4

Galvan was charged with six counts of rape of a child under 14 by a person more than seven years older by force or threat of retaliation (§§ 261, subds. (a)(2), (a)(6), 269, subd. (a)(1); counts 1-6), one count of oral copulation of a child under 14 by a person more than seven years older by force or threat of retaliation (§ 269, subd. (a)(4); former § 288a, subds. (c)(2)-(c)(3), (d); count 7), six counts of lewd and lascivious act upon a child under 14 by force (§ 288, subd. (b)(1); counts 8-14), and 11 counts of rape by force (§ 261, subd. (a)(2); counts 15-25). Special allegations regarding tolling of the statute of limitations were made. (See § 803, subd. (f)(1).) A jury convicted Galvan on all counts and found the special allegations true. The trial court sentenced Galvan to a determinate term of 144 years and an indeterminate term of 105 years to life.

## II. DISCUSSION

Galvan's sole contention on appeal is that the jury was not properly instructed that it must satisfy the unanimity requirement on each individual count.[3] He contends that the instruction given was prejudicially ambiguous. It was not.

"'The right to a unanimous jury in criminal cases is guaranteed by the California Constitution. (Cal. Const., art. I, § 16; [citation].) . . . [¶] It is established that some assurance of unanimity is required where the evidence shows that the defendant has committed two or more similar acts, each of which is a separately chargeable offense, but

---

[3] The People contend that Galvan did not raise this issue at trial and has thus forfeited the issue. It is true that Galvan did not raise the issue at trial. Nevertheless, we will address the issue to forestall a petition for writ of habeas corpus based on a claim of ineffective counsel. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126.)

the information charges fewer offenses than the evidence shows. [Citation.] [A unanimity] instruction is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed. . . . [I]t is generally agreed that under such circumstances, a unanimity instruction of some kind is required to ensure the defendant's constitutional right to a unanimous verdict. [Citations.]' [Citation.] In *People v. Russo* (2001) 25 Cal.4th 1124, the California Supreme Court stated: '[T]he jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.'" (*People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 645 (*Milosavljevic*).)

We must determine whether Galvan's jury was correctly instructed on these well established principles. "Here the question is whether there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts. [Citations] 'In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.] Finally, we determine whether the instruction, so understood, states the applicable law correctly.'" (*People v. Kelly* (1992) 1 Cal.4th 495, 525.). "We assume the jurors are intelligent persons capable of understanding and correlating all jury instructions given them." (*Milosavljevic*, *supra*, 183 Cal.App.4th at p. 649.)

At trial, the jury was given the following instruction, based on CALCRIM 3501, on the charges and the unanimity requirement:

"The defendant is charged with rape of a minor under 14 years of age by a person more than seven years older in Counts 1 through 6 sometime during the period of April 19, 1982, to April 18 of 1995. The defendant is also charged with oral copulation by force of a minor under 14 years of age by a person more than seven years older in Count 7 sometime during the period of April 19, 1992, to April 18, 1995. The defendant is also charged with lewd touching by force or fear of a minor under 14 years old in Counts 8 through 14 some time during the period of April 19, 1988, to April 18, 1995. The defendant is also charged with rape in Counts 15 through 25 some time during the period of April 19, 1995, through April 18, 1999.

"The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless you agree that the People have proved that the defendant committed at least one of these acts, and you all agree on which act he committed for each offense, or you all agree the People have proved the defendant committed all the acts alleged to have occurred during this trial period and have proof [sic] that the defendant committed at least the number of offenses charged."[4]

---

[4] Galvan challenges the instruction only to the extent it states "[y]ou must not find the defendant guilty unless you agree that the People have proved that the defendant committed at least one of these acts, and you all agree on which act he committed for each offense." He does not challenge the alternative theory offered by the instruction, which is that "you all agree the People have proved the defendant committed all the acts

Galvan contends that the instruction erroneously informed the jury that the unanimity requirement only applies to each "offense," not each individual count. Thus, according to Galvan, the jury could reasonably have believed that it only needed to unanimously agree on one act in order to return a guilty verdict on all counts of a charged crime. Not so. Under such a reading, the jury would have to have believed that it needed to agree only as to one act of rape of a minor under 14 in order to convict on all counts alleging that crime, even though the instruction also stated that he was being charged with that crime "in Counts 1 through 6," and was thus alleged to have committed the crime six times. Similarly, even though the instruction stated that Galvan had been charged with lewd touching "in Counts 8 through 14" and with rape "in Counts 15 through 25," the jury would have to believe it only needed to agree as to one act of each in order to convict on all related counts. Because Galvan's reading would essentially collapse the 25 counts Galvan was charged with into only four—one for each unique offense charged—we find there is no reasonable likelihood a juror would have interpreted the instruction in the manner Galvan contends.[5]

---

alleged to have occurred during this . . . period and have proof [sic] that the defendant committed at least the number of offenses charged."

[5] Galvan also contends that a juror could believe that unanimity is required for one count per offense while only a majority is necessary for other counts of the same offense. We find no reasonable likelihood a juror would have interpreted the instructions this way as well. Galvan offers nothing more than speculation why a juror would believe only a majority was needed for certain counts here, other than the fact that this was an "incest case[]" and the possibility that a juror may be of the "'law and order' type."

*Milosavljevic*, which Galvan failed to cite in his opening brief, is directly on point. There, the defendant was charged with "57 counts of forcible rape, forcible sodomy, forcible oral copulation, forcible penetration by a foreign object, false imprisonment, administering an intoxicating agent with intent to commit a felony, assault by means of force likely to produce great bodily injury, and other related offenses involving 10 victims." (*Milosavljevic*, *supra*, 183 Cal.App.4th at pp. 643-644.) On appeal, the defendant argued that "the court's unanimity instruction allowed the jurors to find him guilty on all counts if they unanimously agreed on one act on only one of the counts." (*Id.* at p. 648.) The court disagreed. (*Id.* at pp. 649-650.) Particularly relevant to the case here, the court stated that the jury instruction's "failure to repeat certain . . . offenses when there were two or more counts of that type of offense (e.g., forcible rape) committed against a particular victim was not likely to be understood by the jurors as allowing them to find [the defendant] guilty on all those types of offenses based on only one unanimous finding he committed one act constituting one of those counts without unanimous findings he committed an act constituting each of the other counts or offenses." (*Id.* at p. 650, fn. 10.) Like the instruction given here, the instruction in *Milosavljevic* "stated that a guilty finding required them to 'all agree which act he committed for each offense,'" and the jurors "were not likely to have understood 'each offense' in that instruction as meaning each *category* or *type* of offense (e.g., forcible rape) instead of *each count or charged offense* alleged against" the defendant. (*Ibid.*)

9

In contesting the People's reliance on *Milosavljevic*, Galvan contends in his reply brief that the case is distinguishable because only here did the defendant "actually admit[] to one count," and only here was there disputed evidence as to a victim's age. But whether certain issues were conceded or had sufficiently strong evidence simply has nothing to do with whether the jury was adequately instructed on the unanimity requirement. The fact that *Milosavljevic* or any other case (such as *People v. Fernandez* (2013) 216 Cal.App.4th 540, which also found no instructional error, and which Galvan contends is distinguishable for the same reasons) has different facts does not automatically mean that its legal analysis does not apply.[6]

Galvan also contends that *Milosavljevic* was "weakly reasoned," stating that the case "speculated as to what the jury would or would not do without explaining why." Whether or not we would agree with this assertion does not matter. As we have ourselves explained above, Galvan's reading of the unanimity instruction would require the jury to ignore the fact that multiple counts were charged and collapse the 25 counts into only four, one for each unique crime. This would have been despite Doe's detailed testimony at trial that Galvan regularly molested her over several years. Because there is

---

[6] We note that Galvan's assertion that he "actually admitted to one count" is a mischaracterization of the record. We see no indication from the record that Galvan admitted any of the crimes he was charged with. The only evidence cited in support of his assertion is an admission he made during closing argument that he had sex with Doe once—which is unsurprising, given the paternity of Doe's child—but admitting sex is not the same as admitting forcible rape, the only crime Galvan was charged with involving the period surrounding Doe's pregnancy with the child.

10

no reasonable likelihood that the jury understood the instruction in this way, Galvan's claim fails.

We briefly address Galvan's contention that the "erroneous jury instruction lowered the burden of proof." The argument goes as follows. Galvan contends that if a juror believed that Galvan began raping Doe when she was "closer to age 14," then the juror may have had doubts as to whether Galvan actually committed all of the counts alleging rape of a child under 14. Then, such a juror reasonably could have evaded the problems raised by such doubt by unanimously agreeing with the other jurors only as to one instance of rape and supporting a "less than unanimous verdict" on the other counts.

Assuming for present purposes that the concept of burden of proof is synonymous with the unanimity requirement, Galvan's argument here is based on two additional and alternative assumptions, both of which are unfounded. Initially, the argument assumes that the unanimity instruction was reasonably likely to have been misinterpreted in the first place, which we have rejected above. Then, the juror would have to have disregarded two clearly stated instructions, one on the burden of proof being beyond a reasonable doubt and one on the unanimity requirement. "However, '[t]he crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions.'" (*People v. Delgado* (1993) 5 Cal.4th 312, 331.) Because neither of Galvan's assumptions is credible, we reject his claim regarding the burden of proof. (See also *Milosavljevic*, *supra*, 183 Cal.App.4th at p. 650 [rejecting same contention].)

11

In sum, it was not reasonably likely that Galvan's jury construed the unanimity instruction to require unanimous agreement on only one instance of every type of offense charged, rather than on each charged offense. Accordingly, there was no instructional error, and Galvan's sole contention on appeal fails.

### III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
                                                                    J.

We concur:

RAMIREZ
                    P. J.

MENETREZ
                    J.