DATO, J.
*903 A jury convicted James Adam Webb of first degree murder ( Pen. Code, § 187, subd. (a) ),[1] and found true the special allegation of using a knife in the commission of the offense (§ 12022, subd. (b)(1) ). On appeal from the judgment, Webb argues the court had a sua sponte duty to instruct the jury on the defense of duress ( CALCRIM No. 3402 ). He also claims CALCRIM No. 548 erroneously instructed the jury it did not need to agree on the theory of murder when the two theories corresponded to different degrees . As we explain, remand is required solely for a restitution hearing, but in all other respects we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
Webb lived in a recreational vehicle (RV) parked adjacent to another RV belonging to John R. As Webb would later admit, on August 25, 2014, he entered John's RV, bound him with rope, sprayed him with pepper spray, and drove the RV away.
Webb interacted with several friends that night. Still driving John's RV, he first went to a motel where his friend Gina and her husband were staying. He told them *252 he had done something wrong and might have killed someone, but they did not believe him. He returned later to say he had killed someone and needed help getting rid of the body. They told Webb to leave.
Around 1:00 a.m. Webb encountered his friend "T" in a parking lot. He told her he needed to cash a check from an old man, and she suggested a liquor store. T's acquaintance, Jeff, rode up on a bicycle and pulled a knife out from Webb's pocket. The knife had blood on it, as did Webb's hands. Webb looked at them and said, "I tell you right now, I killed that fuckin' old man in that motor home, and you're going to help me dispose of the body." Not believing him, Jeff tried to lick the knife. Webb pulled it away, saying it was *904 blood. Webb told T he had snapped and stabbed the victim after he objected to a shirt Webb was wearing. Reaching for a set of keys, he asked T if she wanted to go inside John's RV to "see"; T declined. Webb said he did not want to go to prison for "the rest of his life." He later told T and Jeff, "By the way, whatever I said to you earlier is just bullshit, just forget it."
Meanwhile, Gina called her friend Rebecca to convey what Webb had stated. Rebecca told her friend Adam, who was concerned. Rebecca, Adam, Gina, and Gina's husband set off in two cars to search for Webb. When they found John's RV in a parking lot, Adam called 911.
Deputies from the San Bernardino County Sheriff's Department arrived. They found John's body inside the RV. His legs and wrists had been bound, and there was evidence he had been hit with pepper spray. There were multiple blunt force injuries. The cause of death was heavy bleeding from lacerations to the neck.
Deputies located and arrested Webb that night. Webb had John's RV keys in his possession, and the shoes he wore matched prints found outside John's RV. Webb's fingerprint was on a can of pepper spray found in John's RV. Surveillance videos showed Webb driving John's RV to various places.
Webb agreed to speak with deputies. Although his story changed several times, he consistently tried to implicate Adam and another person named Tim as gang members and the actual killers.[2] No evidence linked Adam or Tim to the crime or to any gang. Both denied gang membership at trial. Tim and his girlfriend had been living off and on with Webb. A couple of days before the murder, Webb told Tim's girlfriend that the victim was wealthy, and he planned to knock him out to take his RV.
Earlier on the day of the murder, Adam and Tim went to Webb's RV to retrieve Adam's credit card and Tim's belongings. Upset that he could not locate his card, Adam ripped out several wires from the carburetor of Webb's RV.
Midway through trial, Webb was arraigned on a fourth amended information alleging a single count of murder and that he personally used a knife. The jury was instructed on second degree murder based on malice aforethought. ( CALCRIM No. 520.) It was also instructed on first degree felony-murder with the underlying felony being a kidnapping during a carjacking. (CALCRIM Nos. 540A & 540B.) Over the People's objection, the jury received an instruction on the necessity defense. ( CALCRIM No. 3403.)
*905 The jury convicted Webb of first degree murder and made a true finding on the allegation that, in the commission of the offense, he personally used a deadly and dangerous weapon, a knife. ( §§ 187, subd. (a), 12022, subd. (b)(1).) The court sentenced *253 him to 25 years to life for the murder, plus 1 year for the weapon allegation. He received credit for time served of 700 actual days. Among other fines and fees, the court ordered restitution of $5,000 to reimburse the Victim Compensation Board for the victim's funeral expense.
DISCUSSION
The People concede that Webb is entitled to a restitution hearing on remand.[3] We therefore focus our attention on Webb's remaining claims of instructional error. Webb argues the court had a sua sponte duty to instruct the jury on the defense of duress based on statements he made to Sheriff's deputies. He further contends that the court erred in instructing the jury it did not have to agree on the theory of murder under CALCRIM No. 548.
1. Duress**
2. CALCRIM No. 548
"In a criminal case, a jury verdict must be unanimous. ... Additionally, the jury must agree unanimously the defendant is guilty of a specific crime." ( People v. Russo (2001) 25 Cal.4th 1124, 1132, 108 Cal.Rptr.2d 436, 25 P.3d 641.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all jurors agree the defendant committed.' " ( Ibid. ) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis, or as the cases often put it, the 'theory' whereby the defendant is guilty." ( Ibid . ) For example, to convict a defendant of first degree murder, the jury need not unanimously agree on whether it was premeditated or felony murder. ( Id. at p. 1133, 108 Cal.Rptr.2d 436, 25 P.3d 641.)
*906 Likewise, "the jury need not agree on whether the defendant was guilty as the direct perpetrator or as an aider and abettor as long as it agreed on a specific crime." ( Ibid. )
Reflecting this general principle, the jury was instructed with a version of CALCRIM No. 548 stating:
"The defendant has [ ] been prosecuted for murder under two theories: (1) malice aforethought, and (2) felony murder. [¶] Each theory of murder has different requirements, and I will instruct you on both. [¶] You may not find the defendant guilty of murder unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all need to agree on the same theory, but you must unanimously agree whether the murder is in the first or second degree."
Citing People v. Sanchez (2013) 221 Cal.App.4th 1012, 164 Cal.Rptr.3d 880 ( Sanchez ) and People v. Johnson (2016) 243 Cal.App.4th 1247, 197 Cal.Rptr.3d 353 ( Johnson ), Webb claims that instructing the jury it did not have to agree on the theory of murder was erroneous because it *254 implied the jury did not have to agree on the degree of murder. He argues CALCRIM No. 548 is misleading where the two "theories" involve different degrees.
"In assessing a claim of instructional error, we examine the instructions as a whole. The test we apply is whether there is a reasonable likelihood the jurors would have understood the instructions in a manner that violated a defendant's rights. [Citation.] In this regard, we presume that jurors are intelligent individuals who are capable of understanding instructions and applying them to the facts of the case before them." ( People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1246, 171 Cal.Rptr.3d 234, 324 P.3d 88 ; see Sanchez, supra, 221 Cal.App.4th at p. 1024, 164 Cal.Rptr.3d 880.) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " ( People v. Ramos (2008) 163 Cal.App.4th 1082, 1088, 78 Cal.Rptr.3d 186.)
In Sanchez and Johnson (as here), the jury had to decide between first degree felony murder and second degree malice aforethought murder. ( Sanchez, supra, 221 Cal.App.4th at p. 1019, 164 Cal.Rptr.3d 880 ; Johnson, supra, 243 Cal.App.4th at p. 1251, 197 Cal.Rptr.3d 353.) Instructing the jury under former CALCRIM No. 548 that it did not have to agree on the theory was erroneous because it suggested unanimity was not required as to the degree of murder. ( Sanchez, at p. 1025, 164 Cal.Rptr.3d 880 ["Unanimity was required in this case as to the theory of guilt as a result of different theories supporting different degrees of murder."]; Johnson, at p. 1280, 197 Cal.Rptr.3d 353 ["The flaw in giving CALCRIM No. 548 was that it suggested to the jury that it need not agree on the degree of murder."].)
*907 In response to these cases, the Judicial Council revised CALCRIM No. 548 (2015 rev.). Whereas the last line simply read, "You do not all need to agree on the same theory," the following bracketed language was added: "[, but you must unanimously agree whether the murder is in the first or second degree]." Unlike in Sanchez and Johnson , this jury received the revised instruction and was explicitly told it had to agree on the degree of murder.[5] On the other hand, the given instruction defined malice aforethought and felony-murder as different "theories" and stated unanimity was not required as to the "theory." Although it also stated unanimity was required as to the "degree," the instruction arguably contained an ambiguity.
Webb argues the prosecutor exacerbated the problem by stating in her closing argument, "If some of you believe it was felony murder, some of you believe it was malice aforethought, you do not have to agree on the same theory." Clearly, she misstated the law, although we question the impact of that one sentence when it was followed by six pages of discussion on alternative theories of felony murder .
*255 Ultimately, we need not decide whether the alleged ambiguity in CALCRIM No. 548 amounted to error on the facts of this case. Even if it did, any error was harmless beyond a reasonable doubt. ( Sanchez, supra, 221 Cal.App.4th at p. 1027, 164 Cal.Rptr.3d 880 [applying Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 ]; see also People v. Milosavljevic (2010) 183 Cal.App.4th 640, 647, 107 Cal.Rptr.3d 792 [ Chapman applies where instructional error lowers the prosecution's burden of proof].) Webb admitted binding and pepper spraying the victim and driving away in the victim's RV. Even if the jury believed (based solely on his own statements) that Adam and Tim were involved, there was no evidence he withdrew to avoid liability for aiding and abetting the underlying felony. Webb's only defense at trial was legal necessity; on appeal he argues duress, which the jury necessarily rejected for reasons discussed above. On this record, there is no likelihood the jury did not unanimously agree that he committed felony murder. To the extent CALCRIM No. 548 could be read to suggest unanimity was not required as to the degree of murder, the error was harmless beyond a reasonable doubt.
*908 DISPOSITION
The order of restitution to reimburse the Victim Compensation Board is reversed, and the issue is remanded for a restitution hearing. In all other respects, the judgment is affirmed.
WE CONCUR:
McCONNELL, P. J.
BENKE, J.

Further statutory references are to the Penal Code.

To avoid repetition, we discuss Webb's statements in greater detail in our discussion.

At sentencing, the court ordered Webb to pay $5,000 in restitution to the Victim Compensation Board pursuant to section 1202.4, subdivision (f)(2). It denied his request for a restitution hearing. "The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1); see People v. Lockwood (2013) 214 Cal.App.4th 91, 96, 153 Cal.Rptr.3d 663 ["the defendant is entitled to a hearing to dispute the amount of restitution"].)

See footnote *, ante .

The jury also received several other instructions that were also provided in Sanchez, supra, 221 Cal.App.4th 1012, 164 Cal.Rptr.3d 880 and Johnson, supra, 243 Cal.App.4th 1247, 197 Cal.Rptr.3d 353. CALCRIM No. 640 explained how the jury should deliberate over possible degrees of murder and emphasized the need for unanimity at each step. A modified CALCRIM No. 520 told the jury that if it found the defendant guilty of murder, it was of the second degree unless the prosecution proved it was first degree felony murder under either a direct perpetrator or aiding and abetting theory. In its closing charge, the court instructed the jury under CALCRIM No. 3550 that its "verdict on each count and any special findings must be unanimous. This means that, in order to return a verdict, all of you must agree to it."