Filed 7/17/25  P. v. Cortez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D085922 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF100905) |
| JUAN JOSE CORTEZ, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Affirmed and remanded with instructions.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alana Cohen Butler, and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Juan Jose Cortez of two counts of aggravated sexual penetration (Pen. Code,[1] § 269, subd. (a)(5); counts 1 and 2), one count of sexual penetration (§ 288.7, subd. (b); count 3), and two counts of attempted lewd act (§§ 644, 288, subd. (b)(1); counts 4 and 5) on his niece, Jane Doe, who was under 14 years of age at the time of the offenses.[2]  Cortez was sentenced to serve a total term of 45 years to life.  On appeal, he contends his convictions must be reversed because the trial court erroneously instructed the jury with CALCRIM No. 1193 regarding their consideration of child sexual abuse accommodation syndrome (CSAAS) evidence, and that the abstract of judgment fails to reflect that the court stayed his restitution fine and parole revocation fee.  We reject his instructional error claim.  We affirm the judgment but remand the matter to the trial court with directions to correct the abstract of judgment.

# BACKGROUND

When Jane Doe was seven or eight years old, her uncle began molesting her.  The molestation continued until she was about 12 years old when she and her family moved to a different house without Cortez.  Jane delayed disclosing the abuse because she had been in foster care previously and did not want to end up separated from her siblings.  For various reasons, she also felt she could not confide fully in her grandmother, who was her uncle's mother.  When Jane was close to 15 years old, she disclosed the abuse to her

---

[1]    All further statutory references are to the Penal Code unless otherwise designated.

[2]    The first trial ended in a mistrial because the jury could not reach a verdict.

2

aunt, but Jane was not ready to involve the police at the time. Jane did not speak to law enforcement about the abuse until years later.

Dr. Jody Ward, a clinical and forensic psychologist, is an expert on CSAAS, a pattern of behavior linked to victims of sex abuse. According to Dr. Ward, children who have been molested by people they know tend not to immediately report the abuse out of love and loyalty to the abuser. Such victims usually keep the secret of sexual abuse for long periods of time, and they do not need to be threatened to keep the abuse secret. If the abuse is occurring in the home and the victims are dependent on the adults around them to meet their needs, they may feel helpless and be less likely to disrupt the status quo. Because the reporting is delayed, and the child feels helpless, the perpetrator gains more opportunity to abuse, and the child becomes entrapped in the situation and learns to accommodate it in other ways. Children may accommodate the sexual abuse by enduring it longer and acquiesce to it by believing they must accept the abuse to maintain the positive aspects of the relationship. Children also tend to acquiesce because they want to keep their family together.

Dr. Ward also testified that if molestation victims disclose the abuse, they tend to do so piecemeal, depending on the response of the listener. If a child hints or makes an initial disclosure, and the person hearing it either does not pick up on it or does not want to hear it, the child shuts down and is less likely to divulge the information in the future. Some children will recant once they see their disclosure leads to intrusive interviewing, splits up the family, or the child is sent to foster care. Research also shows that children who have been abused "have certain patterns in their memory." For instance, they "can be expected to lose peripheral details of those memories over time, but the gist of the memory will remain the same."

Dr. Ward testified she did not know the facts of the case, did not review any police reports, and did not interview any of the witnesses. She was not making any statements specific to the victim or rendering any opinion on Cortez's guilt or innocence. Rather, she was addressing how children generally respond to sexual abuse. She further clarified CSAAS is not a tool to diagnose whether sexual abuse occurred.

The trial court instructed the jury with CALCRIM No. 1193 to limit their consideration of CSAAS evidence. Although Cortez objected to the admission of Dr. Ward's testimony, he did not object to use of the limiting instruction. The instruction stated: "You have heard testimony from Dr. Jod[y] Ward regarding Child Sexual Abuse Accommodation Syndrome. [¶] Dr. Ward's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [Jane Doe's] conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony."

## DISCUSSION

Cortez does not claim the evidence supporting his convictions is insufficient. He contends only that CALCRIM No. 1193 misstates the law and violates his Fourteenth Amendment due process rights by improperly inviting the jury to use CSAAS evidence to determine whether the charges of molestation occurred. The People respond that Cortez forfeited the claim by not objecting to the instruction at trial. Even if forfeited, because Cortez argues the asserted error would affect his substantial rights, we exercise our

4

discretion to review the contention on its merits.[3] (See § 1259; *People v. Temple* (2025) 110 Cal.App.5th 1281, 1293, mod. ___ Cal.App.5th ___ [2025 Cal.App. LEXIS 301].)

Our review is de novo. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.) "In assessing a claim of instructional error, we examine the instructions as a whole. The test we apply is whether there is a reasonable likelihood the jurors would have understood the instructions in a manner that violated a defendant's rights. In this regard, we presume that jurors are intelligent individuals who are capable of understanding instructions and applying them to the facts of the case before them. Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Webb* (2018) 25 Cal.App.5th 901, 906 (*Webb*) [cleaned up].)

Cortez argues the "double negative" in the version of CALCRIM No. 1193 given to the jury is confusing; the instruction does not allow the jury to separate its determination of the victim's credibility from that of the defendant's guilt; and the instruction is argumentative. He posits CALCRIM No. 1193, in conjunction with other lacking instructions and the prosecutor's closing argument, created a reasonable likelihood the jurors would use CSAAS to determine the truth of the charges rather than the victim's truthfulness. We are not persuaded.

As given, CALCRIM No. 1193 instructed the jury, in relevant part, "you may consider this evidence only in deciding whether or not [alleged victim's] conduct was *not inconsistent* with the conduct of someone who has been

---

[3] For this reason, we do not address Cortez's alternative assertion that his counsel was ineffective in failing to object to the instruction.

5

molested."[4]  (Italics added).  In September 2022, a year before the trial began, CALCRIM No. 1193 was modified so "not inconsistent with" was replaced with "consistent with."  (Judicial Council of Cal. Criminal Jury Instructions (Sept. 2022 supp.) pp. iii, 62–63.)  Cortez argues this change reflects an official recognition that the original language was prejudicial.  We disagree.

Multiple Courts of Appeal, including this court, have concluded the former version of CALCRIM No. 1193 was a correct statement of the law and its use did not cause prejudice.  (See, e.g., *People v. Ortiz* (2023) 96 Cal.App.5th 768, 815−816 (*Ortiz*); *People v. Ramirez* (2023) 98 Cal.App.5th 175, 188, 219–220 (*Ramirez*); *People v. Lapenias* (2021) 67 Cal.App.5th 162, 175–176 (*Lapenias*); *People v. Munch* (2020) 52 Cal.App.5th 464, 473–474 (*Munch*); *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503–504 (*Gonzales*); accord, *People v. Flores* (2024) 101 Cal.App.5th 438, 458–459 (*Flores*) [court did not err in permitting CSAAS testimony because CALCRIM No. 1193 mitigates prejudice from CSAAS evidence].)  And as Cortez acknowledges, "not inconsistent with" means the same thing as "consistent with."  The modification for clarity did not change the meaning of the instruction; nor was the original so confusing as to cause prejudice.

Analyzing the original version with the "double negative," prior cases have found the language of CALCRIM No. 1193 instructs jurors in such a way that it is not reasonably likely a juror would believe they could use

---

[4]     The clerk's transcript contains two sets of jury instructions.  One set contains the current version of CALCRIM No. 1193, with the victim and expert's name typed into the appropriate spaces.  The second set contains the older version of CALCRIM No. 1193 with the "not inconsistent" language and the page has a checked box that reads, "given as requested."  The second version was read to the jury.

CSAAS evidence in an impermissible manner. (*Ramirez, supra*, 98 Cal.App.5th at pp. 188, 219–220; *Ortiz, supra*, 96 Cal.App.5th at p. 816; *Lapenias, supra*, 67 Cal.App.5th at pp. 175–176; *Munch, supra*, 52 Cal.App.5th at p. 474; *Gonzales, supra*, 16 Cal.App.5th at pp. 503–504.) This is because CALCRIM No. 1193 explicitly tells jurors they must not consider CSAAS testimony as evidence the defendant committed the molestation. (*Ramirez*, p. 219; *Ortiz*, p. 816.) The instruction also says the jury may *only* consider this evidence to ascertain if the victim's behavior was not inconsistent with that of an abuse victim and to evaluate the believability of the alleged victim. (CALCRIM No. 1193.) Both the former and current versions of CALCRIM No. 1193 plainly instruct the jury on how CSAAS evidence may, and may not, be used.

Cortez also contends there is no way to evaluate the credibility of the victim without evaluating whether her allegations are true. *Gonzales* (and cases that followed) rejected a similar argument. It found, "[a] reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the victim's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the victim's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Gonzales, supra*, 16 Cal.App.5th at pp. 503–504; *Munch, supra*, 52 Cal.App.5th at p. 474; see

also *Ortiz, supra,* 96 Cal.App.5th at p. 816; *Lapenias, supra,* 67 Cal.App.5th at pp. 175–176.)

But Cortez argues CALCRIM No. 1193 is "fundamentally argumentative" because it does not tell jurors that the victim's delayed reporting, inconsistent disclosure, and retraction could mean the victim is lying. He further argues the instruction does not give jurors the option to reject CSAAS's explanation for this conduct. We reject this point, too.

A jury instruction is "argumentative" when it recites facts from the evidence in a way that constitutes argument while purporting to be a statement of law, or when it invites the jury to draw inferences favorable to one side from specific pieces of evidence. (*People v. Mullins* (2018) 19 Cal.App.5th 594, 608–609.) CALCRIM No. 1193 is not argumentative because it does not ask the jury to draw either a favorable or an unfavorable inference as to the truth of a victim's testimony. Rather, the instruction simply narrows the relevance of CSAAS evidence to the issue of credibility. It does not tell the jury *how* it should decide if a victim is credible. As *Gonzales* and *Munch* explained, CSAAS simply dispels common misconceptions about how a victim should act in response to the abuse. (*Gonzales, supra,* 16 Cal.App.5th at p. 504; *Munch, supra,* 52 Cal.App.5th at p. 474.) Thus, a juror who believes the CSAAS evidence can find both that the victim's self-impeaching behavior does not affect her believability, and that the evidence does not indicate she was molested. (*Gonzales,* at p. 504; *Munch,* at p. 474.)

Here, Dr. Ward explicitly told the jury she was not making any determinations specific to the victim, including her credibility, or rendering any opinion on Cortez's guilt or innocence. Thus, a reasonable juror would not have understood CALCRIM No. 1193 as directing the jury to use CSAAS

8

to make only a positive evaluation of Jane's credibility. (See *Gonzales, supra*, 16 Cal.App.5th at pp. 502–504; *Munch, supra*, 52 Cal.App.5th at p. 474.)

We also find nothing in the record to support Cortez's assertion that the "prosecutor openly urged the jury to use Dr. Ward's testimony diagnostically and to find that the sexual molestation actually occurred." To the contrary, the prosecutor's closing argument about CSAAS reiterated the limited purpose of CSAAS. The prosecutor told the jury, "Dr. Ward's role in this trial . . . she is not here to tell you about guilt or innocence. She is not here to tell you that [Jane Doe] was telling the truth. . . . [¶] Dr. Ward's role is to come in and talk about the research that she is familiar with after 20 years in the field of how children of child sexual abuse react and how they respond and what does the research show, what does the literature show. Was that consistent with [Jane Doe's] actions?"

Cortez also contends the other jury instructions did not mitigate the asserted problems with CALCRIM No. 1193. We have already rejected his contention of any error with CALCRIM No. 1193. Even so, the court provided the jury with CALCRIM No. 332 (jurors must consider expert opinions but are not required to accept them as true or correct and may disregard any opinion they find unbelievable, unreasonable, or unsupported by the evidence); CALCRIM No. 303 (certain evidence was admitted for a limited purpose and this evidence may only be considered for that purpose and no other); and CALCRIM No. 226 (the jury "alone must judge the credibility or believability of the witnesses").

Taken together, these instructions advised the jury it did not even have to believe Dr. Ward's testimony, which (again) could only be considered for its limited purpose. (See *Munch, supra*, 52 Cal.App.5th at p. 474.) Furthermore, it is unlikely the jurors would rely on Dr. Ward to determine

9

the victim's credibility when they were advised that only they could do so. And we presume the jury followed the instructions they were given. (See *People v. Cain* (1995) 10 Cal.4th 1, 34; *Webb, supra*, 25 Cal.App.5th at p. 906.)

In addition to jury instructions, the expert's own testimony can act as a safeguard against undue prejudice. Courts have affirmed the use of CALCRIM No. 1193 when expert testimony was appropriately limited. For example, in *Munch,* the expert testified he knew no facts about the case. The expert further stated he was not testifying to " 'indicate whether or not sexual assaults took place or occurred here.' " (*Munch, supra*, 52 Cal.App.5th at p. 475; see also *Ramirez, supra*, 98 Cal.App.5th at pp. 219–220; *Lapenias, supra*, 67 Cal.App.5th at p. 169.) Because no juror could reasonably believe the CSAAS testimony was for proving whether the crime occurred, the court concluded there was no prejudice. (*Munch*, at p. 475.)

Other courts have drawn similar conclusions. In *Ortiz*, the expert testified that CSAAS is meant to educate, and not diagnose whether abuse occurred. (*Ortiz, supra*, 96 Cal.App.5th at pp. 782, 816.) She had not discussed the case facts with the prosecutor. (*Id.* at p. 782.) The expert in *Flores* similarly testified how CSAAS helps understand a child's reaction to abuse, but it is not used to determine whether abuse occurred. (*Flores, supra*, 101 Cal.App.5th at p. 458.) She could only testify generally about how children respond to abuse. (*Ibid.)* She did not review any police reports or interview any witnesses. (*Id.* at p. 445.) Numerous cases have affirmed the use of CALCRIM No. 1193 partly because the CSAAS experts in the respective cases acknowledged the limits of their own testimony. (*Ramirez, supra*, 98 Cal.App.5th at pp. 219–220; *Ortiz, supra*, 96 Cal.App.5th at p. 816; *Munch, supra*, 52 Cal.App.5th at p. 475; see *Flores, supra*, 101 Cal.App.5th at pp. 458–459 [reviewed CSAAS testimony rather than instruction]; see also

10

*Lapenias, supra*, 67 Cal.App.5th at pp.169, 175–176 [instruction affirmed on other grounds, no prejudice stemmed from unrelated error because CSAAS expert testified he had limited knowledge of facts].)

Here, Dr. Ward emphasized the limits of her own testimony, like the experts in *Flores, supra*, 101 Cal.App.5th at pages 445, 458, *Ortiz, supra*, 96 Cal.App.5th at pages 782, 816, *Ramirez, supra*, 98 Cal.App.5th at pages 219–220, *Lapenias, supra*, 67 Cal.App.5th at page 169, and *Munch, supra*, 52 Cal.App.5th at page 475. Dr. Ward testified she did not know any facts of the case, did not review any police reports, and did not interview any of the witnesses because she did not intend to make statements about any particular victim or defendant. She explained that she was there to address how children respond to sexual abuse and not to render any opinion as to guilt or innocence of Cortez. She advised that none of the victim's behaviors could be taken after the fact and used to determine whether sexual abuse occurred since CSAAS is not a diagnostic tool.

Given the directions contained in CALCRIM No. 1193, the additional jury instructions, the explanations from the prosecutor, and Dr. Ward's limiting of her own testimony, there is no reasonable likelihood the jury believed CALCRIM No. 1193 gave them license to use an explanation of victim behavior as evidence of guilt. In the face of settled cases with many analogous facts to this one, we will not depart from precedent.

As to the abstract of judgment, we agree with the People's concession that it should be corrected. The abstract of judgment correctly shows the $300 restitution fine imposed under section 1202.4, subdivision (b), was stayed. However, the trial court orally pronounced a $300 restitution fine under section 1202.45 and stayed it. The abstract of judgment should be corrected to show the $300 fine under section 1202.45 was stayed. (*People v.*

11

*Burke* (2023) 89 Cal.App.5th 237, 244 [if there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the former controls].)

The People point out additional errors requiring correction. The trial court ordered $30 per conviction under Government Code section 70373, for a total of $150, but stayed that fine. The court also imposed and stayed a fine of $40 per conviction under section 1465.8, subdivision (a)(1), for a total of $200. The abstract of judgment does not reflect that these fines were imposed and stayed, and the People request it be modified. The abstract of judgment should also be corrected to accurately reflect these aspects of the court's oral pronouncement.

## DISPOSITION

The trial court is instructed to correct the abstract of judgment to reflect: the $300 restitution fine under section 1202.45 is imposed and stayed; the fine of $30 per conviction under Government Code section 70373, for a total of $150, is imposed and stayed; and the fine of $40 per conviction under section 1465.8, subdivision (a)(1), for a total of $200, is imposed and stayed. The trial court is further directed to forward a certified copy of the corrected abstract of judgment to California's Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


DO, J.

I CONCUR:


IRION, Acting P. J.


I CONCUR IN THE RESULT:


CASTILLO, J.


13