Filed 9/15/25  P. v. Lebaron CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br>v.<br>GABRIEL LEBARON,<br><br>Defendant and Appellant. | A170707<br><br>(Solano County<br>Super. Ct. No. FCR353363) |

Defendant was charged with human trafficking to commit another crime (Pen. Code, § 236.1, subd. (b); count 1);[1] trafficking a minor for a commercial sex act (§ 236.1, subd. (c)(1); count 2); dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2); count 3); and child stealing (§ 278; count 4).  He was convicted of dissuasion (§ 136.1, subd. (b)(2); count 3) and child stealing (§ 278; count 4).  He was acquitted on the human trafficking counts (§§ 236.1, subds. (b), (c)(1); counts 1–2).  Defendant argues that because he was acquitted on the human trafficking counts, there was insufficient evidence to support his conviction on the dissuasion count.  We affirm.

---

[1] All statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Trial Testimony*

J.V. is defendant's daughter. In 2019, when J.V. was 16 and then 17 years old, she lived with defendant and her brother in Vacaville. In early 2019, J.V. began using a social media application to offer a nude photo or video of herself in exchange for $10 or $20. After a person sent her the money, she blocked the person from her social media and did not send any nude photos or videos. In addition, J.V. worked at a fast-food restaurant. Defendant took "a lot" of the money she earned from her fast-food job and used it to pay for rent and food.

In June 2019, defendant found J.V.'s phone and learned of the money transfers. Defendant asked J.V. to explain what she was doing and how much money she made. She explained, and defendant told her she could continue with the scam. After J.V.'s conversation with defendant, she began actually sending out nude photos in exchange for money. J.V. felt that defendant was "exploiting" her for money because he would threaten to shave her head or her eyebrows if she did not have money to give him. Defendant never directly told J.V. to take nude photos, but he made her feel that she had to do so.

On September 30, 2019, when J.V. was 17 years old, she ran away from home. On October 4, 2019, the police contacted J.V. at her high school's football game. The police asked J.V. why she ran away, and she told them about defendant's having her sell sexually explicit photos through social media. She was placed in a foster care home that evening. Defendant was notified that J.V. was in the custody of Solano County Child Welfare Services (CWS).

J.V. ran away from the foster home on October 5, 2019. She later called the police, and a social worker placed her in a second foster home on October 6, 2019. During the night of October 6, 2019, J.V. messaged her location to her brother's girlfriend, who then relayed to defendant her location. J.V. left the second foster home the same night. Defendant asked his mother to pick J.V. up at a location in Vallejo. He did not tell his mother (J.V.'s grandmother) that J.V. was in the custody of CWS. Defendant's mother picked J.V. up and took her to a nearby store where defendant was waiting for J.V.

Defendant brought J.V. home, and he asked her what she told the police. She said that she told the police defendant had her post nude photos on social media. Defendant was angry and yelled at her. He told J.V. she needed to tell the police that she had lied. She said she would not do so. She also told defendant that she gave the police her phone. He was upset and said she needed to leave as soon as possible. Defendant told J.V. he was going to send her to Texas, where her biological mother lived. The next day, October 7, 2019, defendant drove J.V. to the airport and she flew to Texas.

Also on October 7, 2019, a police detective went to defendant's home looking for J.V. Defendant was not at home, but a roommate called defendant's phone and the detective spoke with defendant. Defendant stated that he did not know of the whereabouts of J.V. Further, he did not provide the police with an address or phone number for J.V.

J.V. spoke with defendant while she was in Texas. He told her she should not try to enroll in school or speak to anyone because she would get into trouble.

J.V. continued to sell sexually explicit imagery while she was no longer in defendant's care. She bragged about doing so in social media postings,

3

stating she was "making six figures" while her "parents sit there and struggle." She also posted, " 'People who think what I do is cringe make me laugh because I literally make so much money off it.' "

J.V. stayed in Texas for 10 months before returning to California with a social worker.

## II.  *Verdict*

The jury convicted defendant of dissuasion (§ 136.1, subd. (b)(2); count 3) and child stealing (§ 278; count 4).  The jury acquitted defendant on the human trafficking counts (§§ 236.1, subds. (b), (c)(1); counts 1–2).

## DISCUSSION

Defendant argues insufficient evidence supports his conviction for dissuasion because he was acquitted on the human trafficking counts.  He argues that, based on the prosecutor's closing argument, the People elected trafficking as the crime defendant attempted to dissuade J.V. from prosecuting.[2]  According to defendant, because the jury acquitted him on the trafficking counts, the evidence is necessarily insufficient that he dissuaded a victim of a crime.  Based on the statutory language and the relevant jury instructions, we disagree with defendant's contention.

---

[2] Regarding the dissuasion count, the prosecutor argued:  "[Defendant] knew [J.V.] talked to the police because CPS [CWS] told him she's in protective custody and [he] knew after talking to [J.V.] what she told the police. . . .  He told her . . . [to] contact the police to tell them she lied . . . .  He knew the police knew the specific allegations against him because [J.V.] told him what she said. . . .  She told the defendant the police had that phone with that evidence on it. . . .  [¶] He got her on a flight.  He got her out of state. . . . [¶] . . . [¶] . . . He's trying to prevent the complaint from being filed.  He's trying to prevent [J.V.] from cooperating with the prosecution.  That's why he gets her out of town. . . . [¶] . . . That's the decision of someone who's trying to get this human trafficking victim to not be able to be in touch with the police so the police can't put together their investigation to prosecute this defendant."

4

Section 136.1, subdivision (b)(2) states, in relevant part: "[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] . . . [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." Section 136 defines " '[v]ictim' " as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated."

The trial court instructed the jury that to prove defendant is guilty on count 3 (§ 136.1, subd. (b)(2)), the People must prove that "1. The defendant tried to prevent or discourage or prevented or discouraged [J.V.] from cooperating or providing information so that a complaint could be sought and prosecuted and from helping to prosecute that action; [¶] 2. [J.V.] was a crime victim; [¶] AND [¶] 3. The defendant knew he was trying to prevent or discourage or preventing or discouraging [J.V.] from cooperating or providing information so that a complaint could be sought and prosecuted and from helping to prosecute that action and intended to do so. [¶] . . . [¶] A person is a *victim* if there is reason to believe that a federal or state crime is being or has been committed or attempted against him or her. [¶] It is not a defense that the defendant was not successful in preventing or discouraging the victim or witness. [¶] It is not a defense that no one was actually physically injured or otherwise intimidated." (CALCRIM No. 2622.)[3]

---

[3] The instruction also defined "maliciously"; however, this term appears in subdivisions (a) and (c) of section 136.1 but not in subdivision (b), which is

5

Defendant acknowledges that the statutory definition of " 'victim' " for the purposes of section 136.1 is a person as to whom " 'there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated.' " However, he claims that the prosecutor elected trafficking as the crime which victimized J.V. for the purpose of the dissuasion count and that based on the acquittal on counts 1 and 2, J.V. was not a crime victim. Defendant's argument implicitly, and incorrectly, assumes that in order for the People to prove the element that J.V. is a crime victim, they must necessarily prove the trafficking counts beyond a reasonable doubt. He cites no authority for this position, and it conflicts with the statutory definition of "victim," which requires only a finding that there is "reason to believe" a crime was perpetrated or attempted against a person. (§ 136.1.)

We find substantial evidence supports defendant's conviction. J.V. testified that when she returned home on the night of October 6, 2019, and told defendant what she reported to the police, defendant told her to tell the police she lied about his having her sell nude photos. When she refused, defendant told her she needed to leave as soon as possible and that he was going to send her to Texas to live with her mother. The next day, defendant took J.V. to the airport and put her on an airplane to Texas. While J.V. was in Texas, defendant spoke to her and told her not to enroll in school or talk to anyone because she "would get in trouble." This evidence is sufficient to establish that defendant violated section 136.1 by making multiple statements to J.V. and sending her out of state in an attempt to dissuade her from causing a complaint to be filed and prosecuted and from assisting in the

_____

the section defendant was charged with violating. (§ 136.1.) Defendant does not claim it was error to include the definition of "maliciously" within the instruction.

6

prosecution of the complaint. (§ 136.1, subd. (b)(2).) Although the defendant was acquitted on the human trafficking counts, sufficient evidence supports the dissuasion count because a reasonable jury could find that at the time defendant told J.V. to recant her statements to the police and then sent her out of state and told her not to talk to anyone, there was at least "reason to believe" a crime had been perpetrated or attempted against J.V. (§ 136.) Further, the jury convicted defendant of child stealing (§ 278; count 4), which, on this record, may have reasonably been considered part of defendant's ongoing attempts to dissuade J.V. from pursuing a complaint and cooperating with the prosecution.

To the extent the verdicts acquitting defendant on counts 1 and 2 are inconsistent with the verdict convicting him on count 3, such inconsistent verdicts are allowed to stand if they are otherwise supported by substantial evidence. (§ 954 [acquittal on one count shall not be deemed acquittal on any other count]; *People v. Lewis* (2001) 25 Cal.4th 610, 656 [" 'Sufficiency-of-the-evidence review involves assessment . . . of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient' "].) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*Lewis*, at p. 656.) As discussed *ante*, the evidence is sufficient to support defendant's conviction for dissuasion.

Defendant further contends that if the People did not elect to base the dissuasion cause of action on the trafficking counts, then the trial court had a sua sponte obligation to give the unanimity instruction as to the dissuasion count and it erred by failing to do so. The People contend the prosecutor did

not elect to base the dissuasion count solely on the trafficking count. However, they argue that the unanimity instruction is not required because the crime of dissuasion involves a continuous course of conduct. We agree with the People's position.

"In a criminal case, a jury verdict must be unanimous. . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Generally, when the evidence establishes several acts that could constitute the crime charged, the prosecution must select the particular act upon which it relies, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty. (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*).) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.]" (*Russo, supra*, 25 Cal.4th at p. 1132.)

However, the unanimity instruction is not required if the case falls within the "continuous-course-of-conduct exception." (*Jennings, supra*, 50 Cal.4th at p. 679.) The exception applies either " 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time' [citations]." (*Ibid.*)

In *People v. Salvato* (1991) 234 Cal.App.3d 872, the court held that section 136.1 falls within the latter aspect of the continuous conduct exception. (*Salvato*, at p. 882.) *Salvato* explained that "[t]he language of section 136.1 focuses on an unlawful goal or effect, the prevention of testimony, rather than on any particular action taken to produce that end. 'Prevent' and 'dissuade' denote conduct which can occur over a period of time

8

as well as instantaneously.  The gravamen of the offense is the cumulative outcome of any number of acts, any one of which alone might not be criminal. Thus it falls within the continuous conduct exception, and no election or unanimity instruction was required." (*Id.* at p. 883.)  Although *Salvato* involved a charge of dissuading a witness from testifying by threat of violence (§ 136.1, subds. (a) & (c); *Salvato*, at pp. 876, 883), the same reasoning applies to section 136.1, subdivision (b)(2), dissuading a victim from causing a complaint to be sought and prosecuted and assisting in the prosecution. Here, the prosecution argued the defendant's multiple acts from the time he learned J.V. made a report to the police to the time when "he gets her out of town" supported a conviction for dissuading a victim from seeking the prosecution of a crime.  (§ 136.1, subd. (b)(2).)  As in *Salvato*, no election or unanimity instruction was required.

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.